[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-14361

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**October 26, 2006**
**THOMAS K. KAHN**
**CLERK**

D. C. Docket No. 02-00435-CR-T-24-EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VINCENTE REVOLORIO-RAMO,
MISAEL CAMARENO-CAMARENO,
WAGNER HSTI ROTTER,
JUAN ALBERTO PAZ,

Defendants-Appellants,

_____

No. 03-14478

_____

D. C. Docket No. 02-0043-CR-J-24EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO GARCIA-ESTUPINON

Defendant-Appellants,

---

Appeals from the United States District Court
for the Middle District of Florida

---

**(October 26, 2006)**

Before TJOFLAT and HILL, Circuit Judges, and GRANADE,* Chief District Judge.

GRANADE, District Judge:

Vincente Revolorio-Ramo, Misael Camareno-Camareno, Wagner Hsti Rotter, Juan Alberto Paz, and Eduardo Garcia-Estupinon appeal their convictions for conspiracy to possess cocaine with intent to distribute it while on board a vessel subject to the jurisdiction of the United States in violation of 46 U.S.C. app. §§ 1903(a), 1903(g), and 1903(j), and 21 U.S.C. §960(b)(1)(B)(ii). In this appeal, we address the district court's determination that the government's destruction of

---

*Honorable Callie V. S. Granade, Chief United States District Judge for the Southern District of Alabama, sitting by designation.

allegedly exculpatory evidence did not require dismissal of the indictment.[1]

## I.

On October 24, 2002, the U.S. Navy frigate, U.S.S. Boone, intercepted the "Martita Lau," a Guatemalan fishing vessel, approximately 200 miles south of Guatemala. A helicopter from the Navy vessel had spotted the vessel and reported that the crew on the Martita Lau was not fishing, that the vessel was low in the water and that there were large containers on deck. The U.S.S. Boone attempted to hail the vessel, with no response. With high-powered binoculars, officers on the U.S.S. Boone could see people aboard the fishing vessel running frantically on deck and throwing objects overboard.

Officers aboard the U.S.S. Boone, in consultation with a Coast Guard Command Center in the United States, decided to send a team to board the Martita Lau. Officers recovered numerous white rectangular objects floating near the

---

[1] We affirm, without discussion, all other issues raised by appellants. *See* 11th Circuit Rule 36-1. Thus, we conclude that 1) the evidence was sufficient to support the convictions of Revolorio-Ramo, Camareno-Camereno, Rotter and Paz;
2) the district court did not err in denying the motion to dismiss the indictment as the evidence supported the finding that Guatemala had consented to the United States exercise of jurisdiction over the vessel Martita Lau; 3) this Circuit's case law has established that the Maritime Drug Law Enforcement Act is not unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000); 4) that the district court did not err in denying all appellants minor or minimal role in the offense adjustments in calculating the Sentencing Guidelines; and 5) the district court did not err in finding that Garcia-Estupinan was a supervisor in calculating the Sentencing Guidelines

vessel, and one of the recovered objects tested positive for cocaine. Officers ultimately recovered 110 bales of cocaine, weighing between 51 and 81 pounds each - - a total of about 5, 500 pounds. All persons aboard were moved to the U.S.S. Boone and ultimately transported to Tampa, Florida.

The boarding party found that there was fuel oil leaking from the engine as it was running, and a few gallons of oil needed to be added every hour and a half to keep the engine running. Water was leaking from the housing around the propeller shaft housing, about 20 gallons per hour. A bilge pump was running to keep the vessel pumped out.

The parties disagree as to whether the Martita Lau was properly equipped for commercial fishing purposes. The government's position is that a thorough search uncovered only about ten rusty fishing hooks, and that the small quantity of bait aboard was frozen solidly into a hold full of ice which took more than 10 hours to remove with pick axes and shovels brought from the Boone. There was no equipment on board with which the boarding team could remove the ice. The government states that the hydraulic reel on the boat appeared inoperative and was in a rusted, poor condition. There were no life jackets on board and no navigational charts.

Appellants argue that the Martita Lau was a functional fishing vessel

properly equipped for commercial fishing. Four of the appellants testified that they were employed to crew the vessel as a fishing boat, and that the vessel was properly outfitted with bait, ice and equipment for fishing. They claimed to have discovered the true nature of the voyage after they were at sea and when they met up with the go-fast boat containing the bales of cocaine.

On instructions from the Coast Guard, an officer from the U.S.S. Boone recorded images of the vessel and its contents with a digital camera and video recorder. All parties agree that the video tape is of poor quality and that the majority of the photographs did not come out. Several photographs were introduced into evidence that depicted the Martita Lau, and while those photographs showed that the hull was rusty, they did not have sufficient detail to show the condition or presence of the fishing equipment.

The boarding team ultimately determined that the Martita Lau was not seaworthy and could not feasibly be towed to port. Because the vessel constituted a hazard to navigation, it was destroyed.

Appellants, along with four other individuals[2] also present on the Martita

---

[2] Appellant Garcia-Estupinon was one of the five individuals on board who were not members of the original crew of the Martita Lau. These five had been the crew of a go-fast boat that was transporting the cocaine. The go-fast boat experienced mechanical problems, and its crew transferred the cocaine to the Martita Lau, which apparently was intended to re-fuel the go-fast boat. The go-fast boat sank prior to the Coast Guard's interception of the Martita Lau, and its crew members hid aboard the Martita Lau until discovered by the Coast Guard boarding crew.

Lau, were jointly indicted for (1) possession with intent to distribute five kilograms or more of cocaine while aboard the fishing vessel Martita Lau, a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. §§1903(a) and (g) and 21 U.S.C. §960(b)(1)(B)(ii); and (2) conspiracy to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. §§1903 (a), (g) and (j), and 21 U.S.C. § 960(b)(1)(B)(ii). Garcia-Estupinon entered a guilty plea to the indictment without a plea agreement on May 19, 2003. The other appellants proceeded to trial, and the jury returned a guilty verdict as to Count 2.

## II.

The district court's conclusion that no due process violation occurred as a result of the United States' destruction of the Martita Lau is a mixed question of law and fact. We review the court's factual conclusions under the clearly erroneous standard and the court's legal conclusions de novo. U.S. v. Brown, 9 F.3d 907, 910 (11th Cir. 1993) citing U.S. v. Adams, 1 F.3d 1566, 1577 (11th Cir. 1993).

Appellants Rotter and Paz specifically argue that the government's destruction of the Martita Lau denied them their right to due process. Camareno-Camareno and Revolorio-Ramo adopt this argument without objection from the

6

government.  Garcia-Estupinon does not raise this argument and therefore the district court's determinations in his case are affirmed without discussion, as noted above.  Those appellants properly preserving the argument contend that the government's destruction of the Martita Lau, with her potentially exculpatory evidence, violated their due process rights and that the district court should have granted their motions to dismiss the indictment on these grounds.

"In order to show that the loss of evidence by the government constitutes a denial of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984)." U.S. v. Brown, 9 F.3d 907, 910 (11th Cir. 1993).  "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. (quoting Trombetta at 489).  " [F]ailure to preserve this 'potentially useful evidence' does not violate the due process clause 'unless a criminal defendant can show bad faith on the part of the police' " Illinois v. Fisher, 540 U.S.544, 547-548, 124 S. Ct. 1200, 1202 (2004), quoting Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 103 L. Ed. 2d 281 (1988).

The parties disagree as to the quantity and quality of commercial fishing equipment and supplies aboard the Martita Lau. Appellants maintain that there was a large quantity of bait and hooks aboard and that the hydraulic reel was fully functional. The government contends the amount and condition of the hooks and bait, and the inoperable condition of the hydraulic reel demonstrated that no fishing trip was in progress. In addition, the government argues that Appellants' allegations, if true, would have provided potentially exculpatory evidence only to the limited extent that it may have bolstered the argument at trial that appellants were hapless fishermen unknowingly ensnared in a multinational drug running operation.

This case is not a situation where no evidence of commercial fishing was available. The evidence at trial showed that there were hooks and bait aboard the vessel. It is instead a question of the quantity and quality of commercial fishing equipment and supplies aboard. Any potentially exculpatory evidence aboard the Martita Lau would have, at best, bolstered an existing argument that was presented to the jury through the testimony of the defendants, rather than enabling the defense to present argument not otherwise available.

Despite the potentially exculpatory nature of the destroyed evidence, the record demonstrates that the defendants had the opportunity to cross-examine the

law enforcement officers who viewed the contents of the Martita Lau to "attempt to raise doubts in the mind of the factfinder." California v. Trombetta, 467 U.S. 479, 490, 104 S.Ct. 2528, 2535 (1984). This opportunity, coupled with the testimony of the appellants, and the evidence of commercial fishing equipment successfully documented, constitutes comparable evidence.

The government attempted to preserve evidence of the condition of the vessel by taking both still and video photographs. Though the agent in charge of documenting the evidence in question did a singularly poor job of obtaining digital images of the allegedly exculpatory evidence aboard the Martita Lau, and the vast majority of the images were unusable, there is no credible argument advanced to support the contention that this failure stemmed from bad faith on the part of the government. In their briefs, appellants concede that the condition of the boat could have been discerned by examining videotape and photographs, if they had been properly documented. Appellants thus place fault not with the decision to record the condition of the unseaworthy boat prior to sinking her, but rather with the incompetent manner in which this task was performed.

As in Trombetta, "[t]he record contains no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence." California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413

(1984). The Coast Guard district office directed the boarding team to remove any navigation equipment and evidence that could be used in constructing a defense from the Martita Lau and to document the vessel through pictures and videotape. The fact that these instructions were carried out very poorly does not rise to the standard of an intentional bad faith act.  Appellants have never, through brief or oral argument, proffered an explanation for how the case agent could have selectively prevented certain photographs from properly transferring from a digital camera or video camera to an alternative media.

In short, the government clearly attempted, albeit unsuccessfully and perhaps incompetently,  to document the contents of a vessel deemed unseaworthy by the Coast Guard prior to destroying her.  There is no evidence to suggest that the mechanical defects resulting in the failure of the majority of the pictures to accurately capture the intended image was the result of an intentional act.

We conclude, therefore, that the Due Process Clause of the Fourteenth Amendment was not violated by the destruction of the Martita Lau and that the district court appropriately refused to dismiss the indictment on that ground. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.