[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13738

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 3, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-00081-CR-01-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALVIN L. PRICE,
DONALD M. REYNOLDS,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Southern District of Georgia

_____

**(November 3, 2008)**

Before DUBINA, HULL and FAY, Circuit Judges.

FAY, Circuit Judge:

Defendants Reynolds and Price appeal their convictions for armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and discharge of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Reynolds also appeals his conviction for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Reynolds argues that he should not have been limited in his presentation of evidence at the suppression hearing and the district court erred by finding the identification procedure admissible. Reynolds also argues that the district court erred by allowing testimony at trial related to lost or destroyed evidence, permitting testimony at trial from the Rule 11 hearing, and imposing an upward departure at sentencing. Price contends that the government's use of testimony from the Rule 11 hearing creates a reversible error. For the reasons set out below, we affirm Reynolds' convictions and the district court's upward departure at sentencing and we vacate Price's convictions on all counts. Accordingly, we reverse the judgment entered against Price and remand this matter to the district court for a new trial.

## I. BACKGROUND

On April 21, 2006, the Queensboro National Bank and Trust in Hephazibah, Georgia was robbed by a black male, carrying a shotgun and wearing a white jump suit and a long, black wig. The robber fired the shotgun three times: into the

2

ceiling as he entered the bank, demanding money from the teller; into the office of a bank employee; and at a customer service representative. Fortunately, no one was killed. However, a bank employee, shot at inside her cubicle, suffered a wound to her left arm.

The robber left the bank with 6650 dollars in cash. He got in a "getaway" car and drove away. Five to ten minutes later a 911 caller provided a possible description of the "getaway" car. Deputy An, a Richmond County Sheriff's Deputy, saw a nearby car stopped at a stop light that fit the description. Deputy An pulled into a "T-Bone" position with that car. The back seat passenger in the car popped up and fired a shotgun at the Deputy. Deputy An, not hit by the shot, returned fire. The driver then slowly drove the car into a nearby convenience store parking lot at an almost idle speed. The shooter exited the vehicle and ran toward a wooded area behind the convenience store. Price, the driver, was arrested at the convenience store by Deputy Brian Richey. County agents found shotgun shells; white coveralls, a long black wig, a knit cap, two black gloves, a wallet belonging to a bank employee, the bank teller's purse, and a black bag containing 6650 dollars in cash in the back seat of the car. After a ten to fifteen minute chase, Deputy An and two other officers found Reynolds in a nearby neighborhood hiding in a bushy area in front of a residence and placed him under arrest.

3

Deputy An then brought Reynolds to the bank for a show-up identification. The bank employees were informed by an officer that the man responsible for the robbery had been apprehended and then watched as Deputy An removed a handcuffed Reynolds from the backseat of a police vehicle. Reynolds was turned to face the employees and told to show both sides of his face, open his mouth, and hold up his head. The bank employees positively identified Reynolds as the robber.

Defendants Reynolds and Price were indicted on one count each of armed robbery in violation of 18 U.S.C. § 2113(a) and (d), and one count each of discharge of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(iii). Reynolds was also indicted on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). On March 6, 2007 Price and Reynolds were tried before a jury in the Southern District of Georgia and convicted on all counts. On July 31, 2007 Price was sentenced to 155 months for armed robbery and 120 months for possession of a firearm by a convicted felon, to run consecutively for a total sentence of 275 months in confinement. Reynolds was sentenced to 300 months with respect to Count One, 120 months with respect to Count Three, to run concurrently with Count One, and 120 months with respect to Count Two, to be served consecutively.

## II. STANDARD OF REVIEW

There are four issues on appeal before us:

A.    Whether the court erred by finding the identification procedure admissible and whether the magistrate judge should have allowed Reynolds to call witnesses at the suppression hearing.

B.    Whether the court erred by admitting testimony about evidence that had not been preserved or otherwise located for trial.

C.    Whether the court erred by admitting testimony at trial from Price's Rule 11 hearing.

D.    Whether Reynolds' sentence was reasonable.

A district court's determination that an out of court identification procedure was not impermissibly suggestive is subject to clear error review. *United States v. Diaz*, 248 F.3d 1065, 1103 (11th Cir. 2001). If we find the district court committed an error, we review that error to determine if it was harmless. *Marsden v. Moore*, 847 F.2d 1536, 1546 (11th Cir. 1988) ("Unreliable identifications resulting from unduly suggestive photographic displays are subject to harmless error analysis.").

We review evidentiary rulings of the district court for abuse of discretion. *United States v. Novaton*, 271 F.3d 968, 1005 (11th Cir. 2001). Evidentiary errors are only grounds for reversal if "there is a reasonable likelihood that they affected the Defendant's substantial rights; where an error had no substantial influence on

5

the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted." *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005) (quoting *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990)); *see also Kotteakos. v. United States*, 328 U.S. 750, 757 (1946) (quoting *Berger v. United States*, 295 U.S. 78, 82 (1935) ("The true inquiry . . . is not whether there has been a variance of proof, but whether there has been such a variance as to affect the substantial rights of the accused.").

We review sentences imposed by the district court for reasonableness. *United States v. Williams*, 456 F.3d 1353, 1360 (11th Cir. 2006); *see also Kimbrough v. United States*, 128 S.Ct. 558, 574 (2007).

## III.  ANALYSIS

### A.  Suppression Hearing

Reynolds appeals the magistrate judge's decision to bar him from introducing evidence at his suppression hearing and the district court's subsequent decision to allow pretrial and in-court identification testimony at trial.  Before trial, Reynolds challenged the circumstances surrounding his arrest and the procedures used by the arresting officers during the show up.  Specifically, he moved to suppress all pretrial and in-court identification testimony due to its suggestive nature.  A hearing on Reynolds' Motion to Suppress was held before

6

U.S. Magistrate Judge Barfield on December 20, 2006. At the hearing, Judge Barfield denied Reynolds' request to call three bank employees to testify about the suggestive nature of the identification procedure. Judge Barfield then recommended that Reynolds' Motion be denied and the district court subsequently adopted Judge Barfield's recommendation. Reynolds appeals the decision, asserting that he was denied due process because he was not given an adequate opportunity to prove the suggestive nature of the show up at the hearing and the show up created a substantial risk of misidentification at trial.

Show ups "allow identification before the suspect has altered his appearance and while the witness' memory is fresh and permit the quick release of innocent persons." *Johnson v. Dugger*, 817 F.2d 726, 729 (11th Cir. 1987). But, a show up can be unduly suggestive if "the police aggravate the suggestiveness of the show up." *Id.* In "assessing the constitutionality of a trial court's decision to admit an out-of-court identification . . . [f]irst, we must determine whether the original identification procedure was unduly suggestive. If we conclude that it was suggestive, we then must consider whether, under the totality of the circumstances, the identification was nonetheless reliable." *Diaz*, 248 F.3d at 1102. Identification procedures that are found to be unduly suggestive and unreliable are then subject to harmless error review. *Marsden*, 847 F.2d at 1546 ("Unreliable

identification resulting from unduly suggestive photographic displays are subject to harmless error analysis.").

To prove the identification procedure was unduly suggestive, Reynolds tried to call three bank employees as witnesses. Reynolds' counsel told the court the bank employees would testify that (1) Reynolds was forced to hold his head up and open his mouth to show his teeth to the bank employees; and (2) the police told the bank employees they were bringing someone over who they wanted the employees to look at and try to identify. The magistrate judge considered the facts presented by counsel and concluded "even assuming that the bank employees had testified to the information outlined by defense counsel at the hearing, this would not change the conclusion that there was nothing unduly suggestive about the manner in which the show-up was conducted." (District Ct. Docket Entry # 98, Rep. and Recommendation, at 14.) The magistrate judge announced he accepted defense counsel's proffer as given and consequently found it unnecessary to call the bank employees to testify at the suppression hearing. The magistrate judge explained that Reynolds was told to lift his head and open his mouth because the employees had noticed "the distinctive nature" of the robber's teeth. (*Id.* at 14.) The magistrate judge also stated that the officer's remark that the police were bringing over someone to be identified was similarly not suggestive, it was just an

explanation of what was about to occur. The magistrate judge subsequently found the show up was not overly suggestive.

At a suppression hearing, the preferred course is to give great latitude to a party presenting evidence in support of a Motion to Suppress. This is consistent with *United States v. Williams* where we recognized that a defendant should be given wide latitude to develop the factual circumstances about the suggestiveness of an identification procedure. 592 F.2d 1277, 1281 (5th Cir. 1979).[1] In this abundance of caution, instead of considering the evidence that Reynolds proffered these witnesses would testify to, Reynolds should have been able to enter these witnesses' testimony into the record.

Nevertheless, this error had no substantial influence on the outcome of the trial. The danger of misidentification by eyewitnesses in pre-trial identification procedures may be "substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Here, Deputy An and the bank employees were cross examined by Reynolds about the show up and identification process. Reynolds was able to expose any potential errors in the identification procedure to

---

[1] Under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we are bound by cases decided by the former Fifth Circuit before October 1, 1981.

the jury. Reynolds further presented evidence that the robbery lasted only fifty-five seconds (Tr. at 153); that Reynolds was the only person presented to the bank employees for identification (*id.* at 154); that one of the witnesses could not positively identify Reynolds as the robber, provide an accurate description of the robber or recall what he was wearing an hour after the robbery (*id*. at 95 and 98); and that the teller who identified Reynolds avoided looking at the robber during the robbery and did not even recall seeing a gun (*id*. at 150-51). The jury heard the testimony of all of the witnesses, the cross examination of those witnesses, and the facts Reynolds placed into the record before finding Reynolds guilty. Thus, we find the magistrate judge's failure to allow the testimony of the bank employees at the suppression hearing was harmless error.

Viewing this record in its entirety, there is simply no risk that Reynolds was misidentified. This is so because there was an abundance of incriminating evidence identifying Reynolds as the robber, independent of the show up. For example, there was a video tape of the robbery and it was clear from the video that Reynolds was wearing the same clothing as the robber. Thus, the bank employees were not relied upon to remember those details about the robber. Second, the bank employees informed the police about the distinctive nature of the robber's teeth before the show up identification and the robber's teeth were caught on camera.

Reynolds' teeth matched the video and the employees' description. Third, Reynolds was identified by Price, the driver of the "getaway" car, as the passenger in that "getaway" car. Fourth, Price testified that after hearing a loud noise he saw Reynolds in the backseat of the "getaway" car holding a shotgun. Fifth, Reynolds was identified by Deputy An as the person who shot at him. Sixth, the "getaway" car contained the white overalls, long black wig, knit cap, and black gloves worn by the robber. The car also contained a wallet and a purse belonging to bank employees and a black bag filled with the same amount of money that was stolen from the bank. Thus, no substantial risk of misidentification existed because there was overwhelming evidence against Reynolds to support the jury's guilty verdict. Assuming the admission of the show up was error, which we do not hold, it was harmless.

## B. Disruption of Evidence

Reynolds appeals the district court's decision to permit testimony related to evidence unavailable at trial. The government introduced testimony about the "getaway" car, which was destroyed prior to trial, after Defendants filed a Motion to Preserve Evidence. Further, the government called two bank employees as witnesses whose audiotape statements from the day of the robbery disappeared prior to trial. Reynolds objected to the use of this testimony. The court heard

counsels' arguments, and then ruled the testimony admissible. Reynolds appeals the decision, asserting he was denied his right to due process.

Lost evidence does not automatically deny a defendant his or her right to due process. The lost evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). Further, the loss must be due to the government's bad faith. *Id.*

Here, the district court held there was no denial of due process because the evidence was not potentially exculpatory, it was brought before the jury by other means, and there was no showing of bad faith by the government. We agree.

Before destroying the car, the officers seized what they believed to be all the relevant evidence from the car: the stolen money, shotgun shells, the white jumpsuit, the wig, the knit cap, and spent shell casings. Pictures were also taken of the car which the district court observed "would seem to suffice" and Deputy An testified that they fairly and accurately depicted the vehicle he attempted to stop. The district court further permitted testimony and cross-examination of the officers about the contents of the car, its subsequent destruction and any evidence

12

of bad faith.  Reynolds did file a Motion to Preserve Evidence (District Ct. Docket Entry # 40) on May 24, 2006, before the car was destroyed, but the Motion was to preserve all evidence, including "investigative reports, witness statements, documents, . . . contraband, . . . and other physical evidence." (*Id.* at 1.)  The "getaway" car was never specifically mentioned.  Additionally, Reynolds did not move to inspect the vehicle until January 31, 2007, after the car was already destroyed and over eight months after the Motion to Preserve was filed.  (District Ct. Docket Entry # 105, Notice of Intent to Inspect Vehicle.)

Again, assuming arguendo that the court erred in permitting testimony about the destroyed vehicle, it was harmless.  As discussed above, the jury heard testimony about how the vehicle was destroyed.  The jury also saw photographs of the car, and the contents of the car were available for Reynolds' use at trial. Further, the car was not integral to Reynolds' defense. Reynolds did not specifically name the car in his Motion to Preserve Evidence, nor did he move to inspect the car for eight months after he filed the Motion.  The trial court found that "quite frankly, the automobile itself does not appear to me, from my limited perspective, as an important feature of the evidence in this case.  The pictures that we have seen of this vehicle would seem to suffice.  What is important is the laundry list of items that were found in that vehicle . . . " Tr. at 231.  Finally, there

13

was ample evidence that Reynolds was connected to the car and the car was connected to the robbery. Price, the driver of the car, identified Reynolds as a passenger in the car; Reynolds was chased down after jumping out of the car; Reynolds was seen holding a shotgun in the backseat of the car by both Price and Deputy An; items found in the car were linked to the robbery; and Reynolds was identified by the bank employees as the robber who left the bank in the "getaway" car. Although counsel engaged in some speculation, there was nothing to suggest that examination of the car would have revealed any exculpatory evidence.

The court also correctly allowed the bank employees to testify, despite the lost recordings of their previous statements. Reynolds had ample opportunity to establish any inconsistencies in testimony that may have been demonstrated by the lost tapes through other evidence. Reynolds cross examined the bank employees and used investigative notes and officer testimony to bring the witnesses' previous statements before the jury. The jury also heard testimony from the officers about the lost tapes and the jury was instructed about spoliation of evidence. Further, there was no showing of bad faith. Finally, any error was harmless: the jury heard testimony about the lost tapes, the cross examination of the bank employees, the investigative notes, officer testimony, and the jury instruction of spoliation of evidence before finding Reynolds guilty.

14

## C. Rule 11 Hearing Testimony

Defendants Reynolds and Price appeal the court's decision to allow the introduction of testimony from Price's Rule 11 hearing. Initially, Price entered into plea negotiations with the government; he would plead guilty to armed robbery and in exchange the government would dismiss the charge of possession of a firearm by a convicted felon. On February 2, 2007, the district court held a Rule 11 hearing for Price. Judge Bowen, however, did not accept Price's guilty plea because Price refused to admit he knowingly participated in the bank robbery. As a result, Price went to trial. At trial, over the objections of both Defendants,[2] the government introduced testimony from the Rule 11 hearing.

In its cross-examination of Price, the government asked:

Q.    Do you remember testifying before this court earlier?
A.    Yes.
Q.    And when you testified at that time you were sworn by this clerk and you promised to tell the whole truth and you remember Judge Bowen was asking you some questions?
MR. LEOPARD:[3]  I am going to object.  I am not sure what direction [the government] is going in, but we could get into a dangerous situation.

---

[2] Price's objection is the only objection reflected on the transcript, but Reynolds asserts that he also objected. For purposes of this appeal, we assume that Reynolds objected timely to the use of the Rule 11 testimony and is not precluded from bringing this issue up on appeal.

[3] Daniel G. Leopard, Esq. represents Alvin L. Price in this action.

15

THE COURT:     I am going to allow an inquiry into his prior testimony, but only his testimony.[4]

Q.     At that hearing this judge, Judge Bowen, asked you some questions and he specifically asked you 'I'm not so concern[ed] [sic] about what happened at that point in time.  I am concerned about what you knew or did not know at the time when you went to the bank with Mr. Reynolds tell me about that?' And your answer was: 'at the time he was in the bank I was in the car and it was facing toward the traffic?'

Tr. at 363-64.  The government continued:

Q.     Let me read something else to you.  You said during that same hearing: Just a few seconds before 'when I was there at the bank I was facing the traffic. He told me he was going to see someone.  Okay.  So, he got out and I was just looking around, just sight seeing because this is my first time in Georgia.  He comes back in and he told me to go ahead and drive.'  Do you remember saying that?

*Id.* at 365.

Federal Rule of Evidence 410 states that "any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure" is inadmissable "against the defendant who made the plea or was a participant in the plea discussions."  FED. R. EVID. 410(3).  Although Rule 410 makes an exception when the evidence is used for impeachment purposes, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, which supersedes Rule 410, only allows evidence of

---

[4] It would have been extremely helpful if the lawyers had reminded the trial judge that this testimony had come from a Rule 11 hearing.  At the Rule 11 hearing, immediately after the judge had refused to accept Price's guilty plea, the judge advised the lawyers that none of this would be admissible at trial.

16

a withdrawn guilty plea to be admitted in a criminal proceeding for perjury or if there is a false statement. *United States v. Martinez*, 536 F.2d 1107, 1108 (5th Cir. 1976); FED. R. CRIM. P. 11(e)(6). A defendant may also agree to waive his Rule 410 protections. *United States v. Mezzanatto*, 513 U.S. 196, 209 (1995) ("We hold that absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable.").

Price did not waive his Rule 410 protections and the Rule 11 testimony was not admitted for perjury or because Price made a false statement. We find the government's use of Price's Rule 11 testimony erroneous. However, if the evidence against the Defendants, apart from the Rule 11 testimony, was sufficient to support the jury's guilty verdicts and was unaffected by the Rule 11 testimony, then the misuse of the testimony is not reversible error. *Drury*, 396 F.3d at 1315 ("where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted"); *Martinez*, 536 F.2d at 1108 ("But we need not determine whether or not the error was invited because we are convinced that in light of all the evidence presented at trial the sworn statements had only a slight effect on the jury's decision. Therefore the government's mistaken reliance on Rule 410 was harmless error.").

17

With regard to Price, the Rule 11 testimony was not harmless and we therefore find reversible error. As far fetched as it may seem, Price's sole defense was that he was so high on crack cocaine that he knew nothing about the facts leading up to the bank robbery. At trial, Price testified at great length that he was so intoxicated or high on crack cocaine before, during, and after the robbery that he was unaware a robbery or any other crime had taken place. He therefore claimed he did not have the requisite intent to commit the bank robbery or any other offense. Price presented evidence that he smoked crack cocaine prior to and during the stop at the bank (Tr. at 348); was unaware they had stopped at a bank, that a robbery had occurred, or that a shotgun, a bag of money, a wig, and a white jump suit were in the backseat of the car until Reynolds fired the shotgun at law enforcement (*id.* at 353); would not have gotten in the car with Reynolds had he known what was in the car or Reynolds' intent (*id.* at 356); drove the "getaway" car in a manner consistent with a person unaware that a crime had just taken place - under the speed limit "like an old person was driving it" (*id.* at 111); did not run from law enforcement, but slowly idled the car into the gas station (*id.* at 187); and seemed unclear as to why a police officer was pulling him over when he was apprehended (*id.* at 189).

Price's Rule 11 testimony directly contradicted this defense. The government suggested on cross examination of Price that at the Rule 11 hearing Price had stated something to the effect that "when I was there at the bank I was facing the traffic" and "at the time [Reynolds] was in the bank I was in the car and it was facing toward the traffic." *Id.* at 363-65. Price instantly and vehemently denied ever using the word "bank." He maintained that Reynolds had told him he was going to see someone in a store. This testimony could have influenced the jury's finding that Price was cognizant of his surroundings during the robbery and was therefore culpable. The importance of the testimony is reinforced by the jury's request for the Rule 11 hearing transcript during deliberation. The jury's reasoning behind its guilty verdict is unknown. However, due to the nature of Price's defense and the contrary testimony from the Rule 11 hearing, we find that the testimony must have had a substantial influence on the jury's verdict and was not harmless error.

With regards to Reynolds, the Rule 11 testimony was harmless and we therefore find no reversible error. Reynolds argues that the Rule 11 testimony insinuated the court believed Reynolds entered and exited the bank. That insinuation, however, did not affect the outcome of the case. The record contains too much inculpating evidence for the testimony to have affected the jury's guilty

19

verdict.  First, Price testified that Reynolds was in the backseat of the "getaway" car.  Second, County agents found the white coveralls and the long, black wig worn by the robber and identified at trial by the bank employees in the backseat of that car.  The car also contained shotgun shells, a knit cap, black gloves, the 6650 dollars stolen from the bank, and a wallet and a purse belonging to bank employees.  Third, Reynolds was identified as the robber by the bank employees an hour after the robbery and he was identified again during the trial.  Fourth, Reynolds was wearing the same clothes as the robber and he had the same distinctive teeth.  Fifth, Officer An further identified Reynolds in live court as the man who fired a shot in the direction of his vehicle and Price testified that after hearing a loud noise he saw Reynolds holding a shotgun in the backseat of the car. There was overwhelming evidence against Reynolds, unaffected by the Rule 11 testimony, to support the guilty verdict. Thus, we find the court's ruling in this regard was harmless error as to Reynolds.

## D.  Upward Departure at Sentencing

Reynolds appeals the district court's upward departure from the advisory guideline range and its imposition of the maximum sentence allowed.  Reynolds' Pre-sentence Investigation Report recommended an advisory guidelines sentencing range of 135 to 168 months for armed bank robbery and possession of

a firearm by a convicted felon and a mandatory minimum of 120 months to be served consecutively for discharge of a firearm during a crime of violence. Sent. Tr. at 62-63. The district court chose to depart from the advisory guideline range for armed bank robbery and imposed the maximum sentence allowed by statute of 300 months.

When sentencing a defendant, a district court must first calculate the guideline range and then consider the 18 U.S.C. § 3553(a) factors to arrive at a reasonable sentence. *United States v. Owens*, 464 F.3d 1252, 1254 (11th Cir. 2006).

Due to the nature and circumstances of this offense, the district court's upward departure was reasonable. After calculating the guideline range, the court considered the 3553(a) factors and found that an increased sentence would further the goals of punishment and deterrence. Further, citing the blatant nature of the bank robbery, the court sentenced Reynolds above the guideline range because of the particularly egregious facts of the case. Reynolds fired on law enforcement and bank employees and even wounded an employee. The court explained that "Mr. Reynolds blasted his way into the bank shouting and shooting and creating as much terror and intimidation as he possibly could." Sent. Tr. at 61. In fact, the court could not recall any bank robbery where "a weapon has been discharged as

wantonly as this one." *Id.* at 62.  We find the increased sentence was justified and reasonable.

## IV.  CONCLUSION

Based on the foregoing analysis we affirm Reynolds' convictions and his sentence.  We further reverse the judgment entered against Price and remand this matter to the district court for a new trial.

REYNOLDS' CONVICTION AND SENTENCE AFFIRMED; PRICE'S CONVICTION REVERSED AND REMANDED FOR A NEW TRIAL.