[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14548

_____

D.C. Docket No. 0:10-cr-60194-JIC-8


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSEPH DEROSA,

Defendant-Appellant.


_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 22, 2013)

Before MARTIN, JORDAN and SUHRHEINRICH,[*] Circuit Judges.

---

[*] Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

PER CURIAM:

After a jury trial, Joseph Derosa was convicted of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343, and making false statements within the jurisdiction of a federal agency, id. § 1001, based on his alleged participation in a mortgage fraud conspiracy.[1]  At trial the government presented evidence that a group of individuals, including Derosa, participated in a mortgage fraud conspiracy led by Joseph Guaracino.  Guaracino was a police officer with Derosa and some of the other co-defendants before he resigned to work in real estate. The government claimed that Derosa lent Guaracino his name and financial information to borrow money and purchase five properties.

At trial Derosa's main defense was that he did not have sufficient knowledge of the fraudulent aspects of the mortgage transactions to support his conviction. The evidence showed that other people falsified the preliminary loan documents, including by inflating Derosa's salary and savings, omitting information about other real estate transactions, and signing Derosa's name without his permission or knowledge.  On the other hand, the government presented evidence that Derosa personally attended the closings and signed the closing documents, which included the false information the mortgage brokers submitted in the preliminary

_____

[1]  Derosa was also charged with conspiracy to commit these offenses, pursuant to 18 U.S.C. § 1349, but the jury found him not guilty on that count.

documents.  Derosa's main defense was that he did not know, or notice, that what he was signing was fraudulent.

Derosa appeals his conviction arguing that there was insufficient evidence to show his knowledge and intent to participate in the mortgage fraud, or to include false information on documents submitted to the U.S. Department of Housing and Urban Development (HUD).  He also challenges the district court's denial of his motion to dismiss the indictment based on a government witness's destruction of evidence, two evidentiary rulings, and the propriety of statements made in the government's closing.

## I.  MOTION TO DISMISS THE INDICTMENT

Before the government filed the indictment, one of the government's cooperating witnesses, mortgage broker Rene Rodriguez, destroyed a large number of original documents.  Derosa joined another defendant's motion for a spoliation hearing and for dismissal of the indictment based on this destruction of evidence.  After a hearing, the district court denied the motion for dismissal, finding that the government had not acted in bad faith, that most of the documents were for transactions not covered by the indictment, and that an adverse inference instruction would be a sufficient remedy.

3

A district court's conclusion that no due process violation occurred as a result of the destruction of evidence is a mixed question of law and fact. United States v. Revolorio-Ramo, 468 F.3d 771, 774 (11th Cir. 2006). We review findings of fact under the clearly erroneous standard and legal conclusions de novo. Id. To show the government's loss of evidence was a denial of due process, "the defendant must show that the evidence was likely to significantly contribute to his defense." United States v. Brown, 9 F.3d 907, 910 (11th Cir. 1993) (citing California v. Trombetta, 467 U.S. 479, 488, 104 S. Ct. 2528, 2534 (1984)).

Derosa cannot demonstrate the evidence destroyed here was likely to significantly contribute to his defense. Although he claims the destroyed evidence was central to challenging the knowledge and intent elements of the government's proof, the district court found the evidence related mostly to transactions that occurred after the property sales included in the indictment. In addition, as Derosa himself argues on appeal, the evidence at trial established Derosa provided accurate employment information, W-2 statements, bank accounts and other required information to the brokers who took it upon themselves to falsify documents for loan approval. Therefore, further evidence that Derosa submitted accurate original documents or that Rodriguez had falsified pre-qualifying documents was not likely to contribute significantly to Derosa's defense. The district court also gave a curative instruction to the jury that "[y]ou may infer that

4

any documents intentionally destroyed by Rene Rodriquez, Jr. and not preserved for introduction at trial[] are relevant to this case and would have contained information favorable to each of the Defendants on trial today." Accordingly, we affirm the district court's denial of Derosa's motion to dismiss the indictment.

## II.  SUFFICIENCY OF THE EVIDENCE

We review de novo a challenge to the sufficiency of the evidence, considering the evidence in the light most favorable to the government, and drawing all reasonable inferences and credibility choices in the government's favor. United States v. Friske, 640 F.3d 1288, 1290–91 (11th Cir. 2011). "A jury's verdict cannot be overturned if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." United States v. Herrera, 931 F.2d 761, 762 (11th Cir. 1991). "The evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989). "When the government relies on circumstantial evidence, reasonable inferences, not mere speculation, must support the conviction." United States v. Mendez, 528 F.3d 811, 814 (11th Cir. 2008).

Derosa claims the evidence was insufficient to establish the knowledge and intent elements of the mail and wire fraud counts. These elements require proof that Derosa (1) knowingly devised or participated in a scheme to defraud someone or obtained money or property using false or fraudulent pretenses, representations, or promises; and (2) intended to defraud someone. See United States v. Brown, 665 F.3d 1239, 1246 (11th Cir. 2011).

Although Derosa points to evidence that is arguably contrary to a finding of guilt, there is also a "reasonable construction of the evidence [that] would have allowed the jury to find the defendant guilty beyond a reasonable doubt." Herrera, 931 F.2d at 762. Neither is the evidence such that the jury had to speculate to reach its conclusion. Mendez, 528 F.3d at 814.

Derosa participated personally in five of the fraudulent loan transactions. He was present at the closings and signed documents containing false job titles and employment information, inflated income and bank account figures, and misrepresentations about whether he intended to live in the properties as his primary residence. The loan documents also omitted information about other properties for which he was getting loans and buying at the same time.

Although some of the closings might have been "point and sign" closings with no explanation, one of the closing agents, Susan Greenburg-Lieberman,

6

testified that she does not perform point and sign closings. She testified as to her general practice of explaining the various documents to the borrower. A reasonable jury could have concluded that Derosa was put on notice by the more detailed closing with Greenberg-Lieberman, both for it and for the three later transactions in which he participated, and therefore rejected his defense that he did not know the closing documents contained fraudulent information.

There was also sufficient evidence to allow a reasonable jury to conclude that Derosa acted with an intent to defraud. Derosa never contributed any money to the transactions, despite representations on the mortgage documents that funds were coming from him, the borrower. Instead he received funds from Guaracino directly or from an entity controlled by Guaracino. In another instance Derosa wrote a check to the IRS in his name and then received a check in an equal amount from Guaracino. There was also evidence suggesting he lied about the source of the borrower's funds for at least one transaction when he was asked about it by Postal Inspector Bender. This would also permit a jury to infer that he knew it was improper that the funds were not coming from him. Despite not contributing any money himself, there is evidence that Derosa received money in exchange for his participation in the transactions. Derosa also quit-claimed at least two of the properties to Guaracino soon after the purchases, allowing for an inference that his

7

participation was only necessary to receive the financing and that he did not intend to own the properties as an investment.

In the same way, Derosa disputes the knowledge element of the false statement count, claiming there is no evidence that he knew the HUD-1 forms he signed contained false information.  Again, despite the contrary evidence highlighted by Derosa, a reasonable construction of the evidence presented at trial supports the jury's verdict on this count.

The plain language on the HUD-1 form says "cash from borrower" and Derosa admittedly supplied no cash for any of the property transactions.  Despite this admission, the evidence showed that in one instance Derosa signed a HUD-1 form stating the borrower was supplying $110,363.12, while the money was coming from a second mortgage and from Guaracino.  Another HUD-1 form shows two amounts coming from the borrower; although there was evidence Derosa received a check from Guaracino's company several days earlier sufficient to pay these two amounts.  A third HUD-1 form shows a payment of $10,000, but bank records show no $10,000 payment from Derosa.  Considering this evidence in the light most favorable to the government and in the context of the transactions discussed above, we cannot say the jury's conclusion of guilt was unreasonable.

8

We therefore find there was sufficient evidence to support Derosa's convictions.

### III.  EVIDENTIARY RULINGS

"We review the district court's admission of evidence for abuse of discretion."  United States v. Capers, 708 F.3d 1286, 1305 (11th Cir. 2013) (internal quotation marks omitted).  "Even where an abuse of discretion is shown, non-constitutional evidentiary errors are not grounds for reversal absent a reasonable likelihood that the defendant's substantial rights were affected."  Id. (internal quotation marks omitted).   In order for an error to affect substantial rights, the error must have affected the outcome of the district court proceedings. United States v. Gamory, 635 F.3d 480, 494 n.15 (11th Cir. 2011).

### A.  EVIDENCE OF DEROSA'S SIGNATURE

Under Fed. R. Evid. 901(b)(2), a non-expert can testify about handwriting "based upon familiarity not acquired for purposes of the litigation."  See Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1259–61 (11th Cir. 2004) (laying out standard to satisfy Fed. R. Evid. 701 and 901(b)(2)).  Where there is a comparison signature, a formal or lay expert is not needed, because the jury itself can compare signatures and draw its own conclusions.  See United States v. Bell, 833 F.2d 272,

276 (11th Cir. 1987); <u>United States v. Barker</u>, 735 F.2d 1280, 1281 (11th Cir. 1984).

Derosa argues that the government did not sufficiently establish witness Matthew Gulla's familiarity with Derosa's signature to permit him to testify about it. We do not have to address that argument, because a review of Gulla's testimony shows that the jury here was asked to make its own signature comparison. Derosa's driver's license was an exhibit. Thus, during its deliberations, the jury could itself compare that signature to the loan documents and draw its own conclusions. This is in fact what the government asked the jury to do in its closing arguments. On this record, we do not find the district court abused its discretion.

Regardless, Gulla's testimony was not material to proving Derosa's intent and knowledge. Gulla was a mortgage broker, not a closing agent. There was sufficient evidence aside from Gulla's testimony that Derosa was at the closings and signed the closing documents. In addition, the district court offered to instruct the jury that the witnesses's testimony regarding the signatures "does not preclude the jury from making its own comparison based on the evidence," but no defendant, including Derosa, asked for the instruction to be read. Derosa also acknowledges that he was able to cross-examine Gulla, who testified that he never saw Derosa sign any documents, which the jury could also consider. Therefore,

10

even if admitting Gulla's testimony on the signatures was an abuse of discretion, the error did not affect Derosa's substantial rights.

## B.  ADMISSION OF CO-CONSPIRATOR STATEMENTS

A statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).  To introduce coconspirator statements under Rule 801(d)(2)(E), "the government must prove by a preponderance of the evidence that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy."  United States v. Underwood, 446 F.3d 1340, 1345-–1346 (11th Cir. 2006).  "The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it . . . ." Fed. R. Evid. 801(d)(2). "[T]he admission of testimony under the co-conspirator exception to the hearsay rule is not rendered retroactively improper by subsequent acquittal of the alleged co-conspirator."  United States v. Hernandez-Miranda, 78 F.3d 512, 513 (11th Cir. 1996) (internal quotation marks omitted).

On appeal, Derosa complains about three statements made by Guaracino, the alleged leader of the conspiracy, and repeated by various witnesses at trial suggesting Derosa was a knowing and willing participant in the mortgage fraud.

11

Derosa argues that these three statements should not have been admitted, because the jury acquitted him on the conspiracy count and there was no showing that he was part of the conspiracy. Because Derosa made no similar objection to these statements at trial, we review for plain error and find none.

The fact that the jury found Derosa not guilty on the conspiracy charge is immaterial. Hernandez-Martinez, 78 F.3d at 513. There was also sufficient evidence to support a finding, by a preponderance, that Derosa was a participant in the conspiracy. The statements themselves can be considered, pursuant to Rule 801, as long as they are considered together with other evidence. Aside from these statements, we have summarized the evidence of Derosa's participation in the mortgage fraud. In light of the evidence as a whole, the effect of three scattered comments in a two-month trial is limited and we find it did not substantially affect the outcome.

## IV.  PROSECUTORIAL MISCONDUCT

We ordinarily review claims of prosecutorial misconduct de novo; however, if not raised at trial, review is limited to plain error. United States v. Merrill, 513 F.3d 1293, 1306–07 (11th Cir. 2008). "For a claim of prosecutorial misconduct relating to the closing argument to be successful, the argument must be improper and prejudicial to a substantial right of the defendant." Capers, 708 F.3d at 1308 (quoting United States v. Woods, 684 F.3d 1045, 1065 (11th Cir. 2012)). "A

12

defendant's substantial rights are prejudiced if there is a reasonable probability that, but for the improper remarks, the outcome of the trial would have been different." Id. at 1308–09 (quotation marks omitted). Relief will only be granted for "plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." United States v. Bailey, 123 F.3d 1381, 1400 (11th Cir. 1997) (footnote and citations omitted).

Derosa argues that the government improperly reduced its burden of proof and attempted to hold Derosa to a higher standard as a police officer. He claims that the government argued improperly that Derosa's profession and training to detect suspicious behavior made it unlikely he would sign documents without reviewing them or fail to notice false representations. He argues this error was compounded by the fact the evidence against him was circumstantial and the inferences the government asked the jury to draw based on his profession went to the disputed element of the crimes, his knowledge and intent. To support his claim, Derosa only points to two statements in the government's closing arguments and several testimonial questions spanning several pages of the entire two-month trial transcript. Derosa did not object to the government's statements in closing argument and did not object to the line of questioning.

Based on the record before us, we find that the district court did not err in finding that these statements were not improper, because they were relevant to the

13

credibility or believability of the police officer defendants's defense that they did not know about the fraud and did not notice the false statements in the closing documents they signed.

Even if these statements and testimony were improper, we conclude that these few references during a lengthy trial did not prejudice Derosa's substantial rights or jeopardize the fairness and integrity of the trial. As described above, there was sufficient evidence to support the jury's verdict. Nor has Derosa shown that the jury was likely to apply an improper burden of proof. The jury instructions set out the standard for proof beyond a reasonable doubt and reminded the jury that "anything the lawyers say is not evidence and isn't binding on you." The government also mitigated its comments by stating in its rebuttal that "no one is saying that these defendants had some super human power to detect fraud or to know when someone is lying to them" and "[t]hey are not being held to a higher standard, they are not being asked to be held to any higher or lower standard than what any other person would be asked to be held to."

## V.  CONCLUSION

Based on our careful review of the record, we affirm Derosa's convictions. **AFFIRMED.**