[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15724
_____

D.C. Docket No. 4:11-cr-00022-RH-WCS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

THEODORE STEWART FRIES,

Defendant - Appellant.
_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 6, 2013)

Before CARNES, Chief Judge, WILSON and EBEL,[*] Circuit Judges.

WILSON, Circuit Judge:

Theodore Stewart Fries appeals his conviction for transferring a firearm to

an out-of-state resident when neither he nor the buyer was a licensed firearms

_____

[*] Honorable David M. Ebel, United States Circuit Judge for the Tenth Circuit, sitting by designation.

dealer, in violation of 18 U.S.C. § 922(a)(5).  He argues (1) that his conviction should be reversed because the evidence presented at trial was insufficient to prove that he sold a weapon to a person who was not a licensed firearms dealer, which is an essential element of the crime, and (2) that in the alternative, he should be granted a new trial because the jury instructions issued by the district court shifted the burden of proof away from the government as to the licensure status of the buyer.  Because we agree that the record is devoid of evidence as to an essential element of the crime for which Fries was convicted, we reverse.

## I.

In December 2009, Special Agents Donald Williams and William Lee Visnovske of the Bureau of Alcohol, Tobacco, and Firearms (ATF) went to the Tallahassee Gun and Knife Show in Florida for the purpose of conducting an undercover investigation of illegal gun sales.  At the show, Williams asked Visnovske to purchase a firearm from Fries. Visnovske was a Georgia resident, and the sale was to take place in Florida, so it would therefore be illegal for Fries to knowingly sell a weapon to Visnovske, a nonresident of Florida, if neither the buyer nor the seller was a licensed dealer at the time of the transaction.  18 U.S.C. § 922(a)(5).

Posing as a character named "Peebo," Visnovske approached Fries and identified himself as a "Georgia boy."  Visnovske further related that his younger

2

brother was a student at the University of Florida and that he came from Georgia, where he lived, to visit his younger brother in Gainesville about once per month. Upon learning that Visnovske was from Georgia, Fries balked at the sale, explaining "[t]hat he couldn't sell to an out-of-state resident; that [Visnovske] needed to be from Florida."  Agent Williams, who was standing next to Visnovske, then volunteered that he was a Florida resident, to which Fries responded that he could sell the gun to Williams, and "what you do with it, I don't care."  Neither Visnovske nor Williams made any mention of whether they possessed a federal firearms license (FFL).

Because Fries had refused to sell a gun to the nonresident Visnovske the first time around, the agents tried again in April 2010.  Visnovske (still posing as Peebo) and Williams again showed up at a Tallahassee gun show, and Visnovske again attempted to purchase a firearm.  This time Fries took the bait.  Fries told Visnovske that he had just received a Kimber handgun as a trade-in, but that he was willing to sell it to Visnovske for $1,200.  Visnovske agreed to buy the gun, counted out $1,200 in cash in front of Fries, and took possession of the weapon. At no time did Fries ask Visnovske for identification, nor was there any discussion regarding Visnovske's licensure status.

On April 6, 2011, a federal grand jury returned a two-count indictment charging Fries with: (1) engaging in the business of dealing firearms without a

3

license, in violation of 18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D) (Count

I); and (2) selling, while not being a licensed dealer, a Kimber pistol to a

nonresident of the State of Florida who was also not a licensed firearms dealer, in

violation of 18 U.S.C. §§ 922(a)(5) and 924(a)(1)(D) (Count II).[1]

The case was tried to a jury, which returned a verdict of not guilty as to

Count I and of guilty as to Count II on July 27, 2011.[2]  The district court accepted

the verdict, adjudged Fries guilty of Count II, and sentenced him to two years'

probation.  Section 922(a)(5), under which Fries was charged and convicted in

Count II of the indictment, provides that it shall be unlawful

> for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) who the transferor knows or has reasonable cause to believe does not reside in (or if the person is a corporation or other business entity, does not maintain a place of business in) the State in which the transferor resides; except that this paragraph shall not apply to (A) the transfer, transportation, or delivery of a firearm made to carry out a bequest of a firearm to, or an acquisition by intestate succession of a firearm by, a person who is permitted to acquire or possess a firearm under the laws of the State of his residence, and (B) the loan or rental of a firearm to any person for temporary use for lawful sporting purposes.

---

[1] Section 924(a)(1)(D) provides the possible penalties for the substantive offenses enumerated in the indictment.

[2] Because Fries was acquitted of Count I, only Count II is at issue in this appeal, and we therefore set forth only those facts relevant to Count II here.

4

Prior to trial, Fries had asked the district court to modify the applicable Eleventh Circuit Pattern Jury Instruction to include the defense that a person "may be a resident of more than one state if he maintains a home in more than one state." Apparently, Fries wished to present evidence that at the time he sold the gun, he believed Visnovske to be a resident of Georgia *and* Florida because of Visnovske's story about visiting his younger brother once per month at the University of Florida. During argument on this issue, the district judge commented, "I take it in this case the only claim is that Mr. Fries knew he was unlicensed and knew he was selling to somebody that was a nonresident. There is no claim about speeding or anything like that." Fries's counsel later responded, "That's all I'm asking the court to do, is to instruct the jury accurately about this dual citizenship law, and I think that's what I propose." No mention was ever made—by the government, by Fries, or by the court—of the fact that § 922(a)(5) might include as an element that the buyer of the weapon be unlicensed.

After discussing the jury instructions with the parties at a charge conference, the district court ultimately issued the following jury instruction as to the Count II:

> [A] sale or transfer by an unlicensed person can only be made to a person who resides in the same state. Thus, a Florida resident who does not have a federal license cannot legally sell or transfer a firearm to a person who does not reside in Florida. There are exceptions—for a transfer to a licensed dealer, for a firearm that [is] passing through inheritance, and for a firearm that is being loaned or rented for sporting purposes—but the exceptions are not involved in this case.

5

The defendant can be found guilty on Count Two if, and only if, all the following facts have been proved beyond a reasonable doubt:

First, the defendant did not have a Federal Firearms License[;]

Second, the defendant sold or transferred the firearm described in the indictment in Florida;

Third, the defendant knew or had reasonable cause to believe that the person who was acquiring the firearm through the sale or transfer did not reside in Florida; and,

Fourth, the defendant acted willfully.

Fries did not object to the proposed jury instruction, either at the charge conference or at trial, on the ground that it did not require the government to prove that the buyer of the firearm did not possess an FFL. Nor did Fries file a motion for judgment of acquittal at the close of the government's case, at the close of all the evidence, or in a post-trial motion.

Fries filed a notice of appeal, but soon thereafter his attorney filed a motion to withdraw as counsel and an *Anders*[3] brief, contending that a review of the record revealed no arguable issue of merit upon which he could proceed in good faith. A member of this Court subsequently denied the motion to withdraw and ordered further briefing on the following two issues:

(1) whether the district court effectively removed the burden of proof regarding an element of the 18 U.S.C. § 922(a)(5) offense by instructing the jury that the sale of a firearm to a licensed dealer was an exception to the prohibition on sales to non-residents that did not

---

[3] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396 (1967).

apply in the case; and (2) whether the evidence was insufficient to convict when no evidence was presented as to whether the buyer of the firearm was a licensed dealer.

In keeping with that directive, Fries now argues that because there is insufficient evidence to support a finding that Visnovske did not have an FFL when Fries sold him the firearm at issue in Count II, his conviction should be reversed. He also argues in the alternative that because the trial judge instructed the jury that transferee's licensure status was an exception to criminal liability under § 922(a)(5) rather than an essential element of the crime, the jury instructions erroneously relieved the government of its burden to prove beyond a reasonable doubt that the person to whom Fries allegedly sold the Kimber firearm charged in Count II of the indictment (Visnovske) did not possess an FFL.

## II.

We begin with Fries's argument that insufficient evidence supports his conviction for violating 18 U.S.C. § 922(a)(5).[4]  Ordinarily, we review de novo

---

[4] Because we reverse Fries's conviction based upon the insufficiency of the evidence, we have no occasion to reach his argument regarding the propriety of the jury instructions given by the district court. Although the two issues overlap somewhat, we would have to reach the sufficiency of the evidence question regardless of the result we reached with regard to the jury instructions. That is because double jeopardy attaches and requires that we reverse a conviction and remand for judgment of acquittal upon a finding that there was insufficient evidence to convict a defendant of an offense, whereas a finding of plain error as to jury instructions merely requires vacatur of the conviction and remand for a new trial. *United States v. Mount*, 161 F.3d 675, 678 (11th Cir. 1998). Therefore, "[o]nly if the evidence is sufficient for a properly instructed jury to have convicted [the defendant of the crime charged] . . . do we have to determine whether the district court's erroneous jury instruction constituted plain error requiring reversal and remand for a new trial." *Id.*

whether sufficient evidence supports a conviction, viewing the evidence and taking all reasonable inferences in favor of the jury's verdict. *United States v. Farley*, 607 F.3d 1294, 1333 (11th Cir. 2010). But where a defendant does not move for acquittal or otherwise preserve an argument regarding the sufficiency of the evidence in the court below, the defendant "must shoulder a somewhat heavier burden: we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice." *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006).[5] This standard requires us to find either that the record is devoid of evidence of an essential element of the crime or "that the evidence on a key

---

[5] The parties both suggest that we should review the sufficiency of the evidence in this case for plain error, but where a defendant fails to preserve an argument as to the sufficiency of the evidence in the trial court, the predominant rule in this circuit—established by a long and unchallenged line of cases—is better stated as requiring that we uphold the conviction unless to do so would work a "manifest miscarriage of justice." *See United States v. Perez*, 661 F.3d 568, 573–74 (11th Cir. 2011) (per curiam), *cert. denied*, 132 S. Ct. 1943 (2012); *United States v. Thompson*, 610 F.3d 1335, 1338 (11th Cir. 2010) (per curiam) (applying manifest miscarriage of justice standard where defendant never moved for judgment of acquittal on certain counts at issue on appeal); *United States v. Tagg*, 572 F.3d 1320, 1323 (11th Cir. 2009) (reviewing for manifest miscarriage of justice where "[a]t no time did the defense move for a judgment of acquittal"); *United States v. Edwards*, 526 F.3d 747, 756 (11th Cir. 2008); *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006) (per curiam); *United States v. Schier*, 438 F.3d 1104, 1107 (11th Cir. 2006); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Burston*, 159 F.3d 1328, 1332 n.5 (11th Cir. 1998); *United States v. Bichsel*, 156 F.3d 1148, 1150 (11th Cir. 1998) (per curiam) (applying manifest miscarriage of justice standard where defendants "waived any objection to the sufficiency of the evidence" by failing to renew their motion for judgment of acquittal at the close of all the evidence); *United States v. Adams*, 91 F.3d 114, 116 (11th Cir. 1996) (per curiam); *United States v. Horsley*, 56 F.3d 50, 52 (11th Cir. 1995) (per curiam); *United States v. Hamblin*, 911 F.2d 551, 556–57 (11th Cir. 1990); *United States v. Pate*, 543 F.2d 1148, 1150 (5th Cir. 1976); *Thomas v. United States*, 189 F.2d 430, 430 (5th Cir. 1951) (per curiam); *Moore v. United States*, 161 F.2d 932, 933 (5th Cir. 1947) (per curiam) ("Here on a record which contains neither motion for a directed verdict nor any objections or exceptions taken in the course of the trial, appellant seeks a reversal on the ground that the record shows that a manifest miscarriage of justice has occurred.").

element of the offense is so tenuous that a conviction would be shocking."

*Milkintas*, 470 F.3d at 1343 (internal quotation marks omitted); *see United States v.*

*Wright*, 63 F.3d 1067, 1072 (11th Cir. 1995).

### A.

To prove that a defendant violated § 922(a)(5), the government must offer evidence of four essential elements: (1) the defendant was not a licensed firearms importer, manufacturer, dealer, or collector; (2) the defendant transferred, sold, traded, gave, transported, or delivered a firearm to another person; (3) the person to whom the defendant transferred the firearm was not a licensed importer, manufacturer, dealer, or collector; and (4) the defendant knew or had reasonable cause to believe that the person to whom the firearm was transferred did not reside in the defendant's state of residence.  § 922(a)(5); *see United States v. Tyson*, 653 F.3d 192, 205 (3d Cir. 2011); *United States v. James*, 172 F.3d 588, 593 (8th Cir. 1999) ("In section 922(a)(5), Congress created the single offense of transferring (by any one of several different means) a firearm by an unlicensed person to any other unlicensed person who resides in a different state than the state in which the defendant resides.").  Therefore, and insofar as the parties and the district court at trial believed the transferee's licensure status to be an exception to § 922(a)(5) rather than an essential element of the same, they were wrong.  *See Tyson*, 653 F.3d at 205; *James*, 172 F.3d at 593; *see also United States v. Lain*, 640 F.3d 1134,

1139 (10th Cir. 2011) ("The Government argues it presented the testimony of six witnesses, two firearm exhibits, and verification that neither Defendant nor [the transferee] possessed the necessary license."); *United States v. Lopez*, 2 F.3d 1342, 1356 (5th Cir. 1993) (explaining that § 922(a)(5) "prohibit[s] non-licensee transfers of firearms to other non-licensees residing in a state other than that of the transferor's residence"), *aff'd*, 514 U.S. 549, 115 S. Ct. 1624 (1995).[6]  Our view in this regard is fortified by the fact that the Eleventh Circuit Pattern Jury Instructions—which, although not binding, are "generally considered a valuable

---

[6] Although the government half-heartedly submits in its response brief that "it can be argued that both parties are not federal firearms license holders is *not* an element of proof necessary to obtain a conviction for a violation" of § 922(a)(5), the plain language of the statute clearly requires that both the defendant and the person to whom the defendant transfers the firearm be persons "other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector."  § 922(a)(5).  The government apparently reads the statute as we do, too, because the indictment charges in Count II that

> Theodore Stewart Fries, a resident of the State of Florida, not being a licensed importer, manufacturer, dealer, and collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, did willfully transfer and sell a firearm, that is, a Kimber, Model Warrior, .45 caliber pistol, to a person not being a licensed importer, manufacturer, dealer, and collector of firearms, within the meaning of Chapter 44, Title 18, United States Code, knowing and with reasonable cause to believe that said person was not then residing in the State of Florida at the time of the aforesaid transfer and sale of the firearm.

Further, it would be an absurd reading of the statute to construe the words "(other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector)" as an essential element where they apply to the defendant, but to interpret that very same parenthetical statement *not* to be an essential element when it appears later in the same sentence as a modifier of the transferee of the weapon.  *See* § 922(a)(5) (rendering it unlawful "for any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector) to transfer, sell, trade, give, transport, or deliver any firearm to any person (other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector)" whom the transferor knows to be a nonresident).

resource, reflecting the collective research of a panel of distinguished judges,"
*United States v. Dohan*, 508 F.3d 989, 994 (11th Cir. 2007) (per curiam) (internal
quotation marks omitted)—include as an essential element to § 922(a)(5) that
"neither the Defendant nor the person who received the firearm was a licensed
firearms dealer, importer, manufacturer, or collector" at the time of alleged
transfer. *Eleventh Circuit Pattern Jury Instructions (Criminal)*, Offense
Instruction No. 34.2 (2010); *see also Manual of Model Criminal Jury Instructions
for the District Courts of the Ninth Circuit*, No. 8.57 (including, as an element of
§ 922(a)(5), that "neither the defendant nor [name of unlicensed dealer] was
licensed as a firearm [dealer] [importer] [manufacturer] [collector]" at the time of
the offense). The plain language of § 922(a)(5) clearly requires the government to
prove, as an essential element of the offense, that neither the defendant nor the
nonresident to whom the defendant allegedly transferred the weapon possessed an
FFL at the time of the transfer.

## B.

Having determined that § 922(a)(5) requires proof that the defendant sold a
firearm to an unlicensed person as part of the government's prima facie case, we
turn to whether there is evidence in the record sufficient to salvage Fries's
conviction. Because Fries failed to move for acquittal at trial, we comb the entire
record and will affirm so long as we find some paucity of evidence that could have

11

supported the jury's finding that the person to whom Fries sold a firearm—Visnovske—did not possess an FFL at the time of the transfer. *See Greer*, 440 F.3d at 1271 (explaining that the manifest miscarriage of justice standard "requires the appellate court to find that the evidence on a key element of the offense is so tenuous that a conviction would be shocking" (internal quotation marks omitted)). The problem for the government is that we find none.

The government concedes that the record contains no direct evidence of Visnovske's licensure status, such as Visnovske's own testimony that he lacked an FFL or the testimony of a custodian of records to that effect. The government contends, however, that a jury could have found that Visnovske was unlicensed from testimony between Fries and various ATF agents in which Fries apparently demonstrated knowledge that it would be illegal sell a gun to a nonresident of Florida unless that person held an FFL. That fact, plus Fries's attempts to circumvent the law, says the government, can be relied upon to prove that Visnovske was actually unlicensed at the time of the sale. Put another way, the government argues that Fries's subjective belief that he was breaking the law by selling the weapon to Visnovske is evidence of the objective fact that Visnovske was unlicensed. We are unpersuaded. As we see it, because Fries lacked personal knowledge of Visnovske's licensure status, his *subjective* belief that he was executing a transaction with an unlicensed person simply does not bear upon the

12

*objective* state of affairs as they actually were at the time of the sale. In light of the government's concession that the record contains no other evidence on this front, the record is completely bereft of any evidence that Visnovske was, as a matter of objective fact, unlicensed at the time of sale. That being so, our inquiry is at its end—Fries's conviction cannot stand: "To uphold a conviction, in the absence of any evidence as to an essential element, would be a miscarriage of justice." *United States v. Tapia*, 761 F.2d 1488, 1492 (11th Cir. 1985) (per curiam) (internal quotation marks omitted); *see Wright*, 63 F.3d at 1074 ("Under the manifest miscarriage of justice standard, reversal is required only if the record is devoid of evidence pointing to [the defendant's] guilt or the evidence of a key element is so tenuous that a conviction would be shocking."); *Hamblin*, 911 F.2d at 558 ("The record is otherwise devoid of evidence to support the jury's verdict, and intuition cannot substitute for admissible evidence when a defendant is on trial.").

The government next argues that any error in not submitting evidence of Visnovske's licensure status was harmless because, had Fries objected at trial, the government *could have* proved Visnovske was unlicensed. But on appeal, we are confined to the record before us. And our searching review of the record in this case simply reveals no evidence whatsoever that Visnovske—the person to whom Fries allegedly sold a firearm—did not possess a license at the time of the sale. In every criminal case, the government must be put to its proof, and though the failure

to make a contemporaneous objection or motion at trial may affect our standard of review, permitting a conviction to stand where not a whit of evidence supports an essential element of the crime charged would do great damage to the considerations of due process that serve as a fundamental bulwark of our criminal justice system.  *Cf. In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 1073 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *United States v. Vuitch*, 402 U.S. 62, 72 n.7, 91 S. Ct. 1294, 1299 n.7 (1961) (explaining that "a court should always set aside a jury verdict of guilt when there is not evidence from which a jury could find a defendant guilty beyond a reasonable doubt"); *Clyatt v. United States*, 197 U.S. 207, 222, 25 S. Ct. 429, 433 (1905) ("[I]t is the imperative duty of a court to see that all the elements of [a] crime are proved, or at least that testimony is offered which justifies a jury in finding those elements.").  The government's harmlessness argument therefore does little to cure the key defect in this case, which is that it failed to offer any evidence of an essential element of the crime for which Fries stands convicted.

It is no answer to say that the particular element at issue here—the licensure status of the transferee for purposes of § 922(a)(5)—is unimportant or somehow a technicality: our charge as arbiters of the law does not turn upon the potential for

intrigue presented by the particular plot or cast of characters of a given case. Even where the defendant fails to move for acquittal and our review of the record is at its most charitable, in the end the responsibility to provide some scintilla of evidence regarding each element of a crime falls squarely on the government. Because the government failed to make that minimal showing, Fries's conviction must fall.

## III.

The judgment of the district court is reversed, and the case remanded to the district court with instructions to enter judgment of acquittal on Fries's behalf as to Count II of the indictment.

**REVERSED AND REMANDED.**

CARNES, Chief Judge, concurring:

During the charge conference held at the end of the first day of trial, Fries went along with an instruction, suggested by the court, containing language that while there are exceptions to 18 U.S.C. § 922(a)(5)'s licensing requirement, including one "for a transfer to a licensed dealer, . . . the exceptions are not involved in this case." That instruction was eventually given, without objection. The quoted statement sounds somewhat like a proposed stipulation. One might argue that by not objecting to that statement Fries stipulated to the fact that his transfer to undercover agent Visnovske was not a transfer to a licensed dealer. But the government did not argue that to us, at least not as to the sufficiency of the evidence issue, which is the only one that this Court reaches.

Nor can it be said that by not objecting to that jury instruction at the charge conference Fries lulled the government into failing to ask Visnovske if he was a licensed dealer. Visnovske testified during the first day of the trial, before the charge conference was conducted. The government's failure to ask him if he was a licensed dealer occurred before it knew what Fries' position might be on that factual issue. Fries did not sucker punch the government. Instead, it knocked itself out of a valid conviction by not asking its witness a simple question the importance of which is obvious from the indictment's allegation that Fries had transferred the

16

firearm "to a person not being a licensed importer, manufacturer, dealer, and collector of firearms." It is not asking too much to expect a prosecutor, before a trial ends, to look at the indictment to ensure that all of the elements alleged in it have been proven.  The prosecutor in this case failed to do that.