[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 17-12894; 17-13893
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cr-00182-MMH-PDB-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

SALIH ZEKI UCES,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

(August 10, 2018)

Before MARTIN, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

A jury convicted Salih Uces of one count of international parental kidnapping, *see* 18 U.S.C. § 1204, for removing or retaining his daughter outside of the United States with the intent to obstruct the parental rights of his daughter's mother, Esra Memili.  Mr. Uces raises two issues on appeal.  First, he argues that the district court constructively amended the indictment by including the term "knowingly" in the jury instructions as an element of § 1204.  He contends that the addition of this term allowed him to be convicted "based solely on his knowingly removing or retaining his child" without regard to the "intent to obstruct another's parental rights."  Second, he argues that, because he and Ms. Memili had equal parental rights, a conviction for removing the child is legally insufficient and, therefore, he should receive a new trial.  After careful review, we affirm.

**I**

We address first Mr. Uces' contention that the district court constructively amended the indictment by inserting the term "knowingly" into the jury instructions.  No objection was made at trial, so we review only for plain error.  *See United States v. Madden*, 733 F.3d 1314, 1321 (11th Cir. 2013).  Mr. Uces must demonstrate that "(1) an error occurred, (2) the error was plain, and (3) the error affected substantial rights."  *United States v. Felts*, 579 F.3d 1341, 1344 (11th Cir. 2009) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).  "There can be no plain error where there is no precedent from the Supreme Court or this Court

2

directly resolving an issue." *United States v. Sammour*, 816 F.3d 1328, 1337 (11th Cir. 2016) (alterations adopted). "A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *Madden*, 733 F.3d at 1318 (quotation marks omitted).

The crime of international parental kidnapping occurs when one "removes a child from the United States . . . or retains a child (who has been in the United States) outside the United States with the intent to obstruct the lawful exercise of parental rights." 18 U.S.C. § 1204. Mr. Uces' indictment tracked that statutory language. *See* D.E. 12. When instructing the jury, the district court explained that Mr. Uces could be found guilty if the government proved the following elements beyond a reasonable doubt:

First, that the child was previously in the United States;

Second, that Salih Zeki Uces, either:

    (a) knowingly took the child from the United States to another country; or

    (b) beginning on or about September 16, 2016, until on or about November 10, 2016, knowingly retained the child outside the United States; and

Third, that Salih Zeki Uces, acted with the intent to obstruct the lawful exercise of another person's parental rights.

D.E. 61 at 7–8.  The district court also instructed the jury on the meaning of various terms, including the term knowingly, which was defined as "voluntarily and intentionally and not because of a mistake or by accident" but did not require that Mr. Uces knew that "he was violating a criminal law." *Id*. at 12.

During deliberations, the jury asked two questions, with the second question specifically focusing on when "the act of intent to obstruct the lawful exercise of a person's parental rights [has] to occur." D.E. 58-1 at 5.  The district court responded that it was "not entirely sure what you are referring to as 'the act of intent'" and provided an additional instruction:

> Consistent with [the prior jury instruction], Mr. Uces can be found guilty of this offense only if:
>
> A. the Government proves beyond a reasonable doubt
>    1. that the child was previously in the United States;
>    2. that Mr Uces knowingly took the child from the United States to another country, and
>    3. that in doing so, he acted with the intent to obstruct the lawful exercise of another person's parental rights;
>
> Or
>
> B. the Government proves beyond a reasonable doubt
>    1. that the child was previously in the United States;
>    2. that beginning on or about September 16, 2016, until on or about November 10, 2016, Mr. Uces knowingly retained the child outside the United States,
>    3. that in doing so, Mr. Uces acted with the intent to obstruct the lawful exercise of another person's parental rights.

*Id*. at 6.

4

Although he did not object to any of these instructions at trial, Mr. Uces now contends that the insertion of the term "knowingly" constructively amended the indictment and would allow the jury to convict him solely for knowing removal or retention without the intent to obstruct Ms. Memili's parental rights. We disagree. Accepting this argument would require us to violate two cardinal rules. First, it asks us to assume that the jury completely ignored the instruction on the intent to obstruct the parental rights element, when "we must presume that juries follow their instructions." *United States v. Roy*, 855 F.3d 1133, 1186 (11th Cir. 2017) (en banc). *See also Olano*, 507 U.S. at 740 ("We presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.") (alterations adopted). Second, it asks us to look at the jury instructions in isolation. To the contrary, "instructions must be evaluated not in isolation but in the context of the entire charge" and "there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism." *United States v. Gonzalez*, 834 F.3d 1206, 1222 (11th Cir. 2016). *See also United States v. Park*, 421 U.S. 658, 674–75 (1975) ("[I]n reviewing jury instructions, our task is to view the charge itself as part of the whole trial. Often statements taken from the charge, seemingly

5

prejudicial on their face, are not so when considered in the context of the entire record of the trial.") (quotation marks omitted).

The term "knowingly" may have indeed been unnecessary. As Mr. Uces notes, it is unlikely that a parent could act with the requisite intent to obstruct parental rights without knowingly removing or retaining his or her child outside the United States. Such removals are unlikely to happen by mistake or accident. Its inclusion did not, however, broaden the bases for conviction because the jury was consistently reminded that it could only convict Mr. Uces if it found that he "acted with the intent to obstruct the lawful exercise of another person's parental rights." *See* D.E. 61 at 7–8 (original jury instruction); D.E. 58-1 at 6 (response to jury question). Beyond this, Mr. Uces has not pointed to any precedent that would establish that the inclusion of "knowingly" was error, so he has not met his burden to show plain error. *See Sammour*, 816 F.3d at 1337.

## II

We next address Mr. Uces' argument that a conviction based on the theory of "removal" is legally insufficient because he and Ms. Memili had equal parental rights. Mr. Uces admits that the alleged error was not objected to at trial, so we review for plain error. *See Madden*, 733 F.3d at 1321. The government contends that Mr. Uces' argument is actually a challenge to the sufficiency of the evidence which, because he did "not move for acquittal or otherwise preserve an argument

6

regarding the sufficiency of the evidence" we "will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice." *United States v. Fries*, 725 F.3d 1286, 1291 (11th Cir. 2013). Under either theory, Mr. Uces' challenge fails.

First, the fact that Mr. Uces had equal parental rights does not render the removal theory legally insufficient. "Congress enacted the International Parental Kidnapping Crime Act in 1993 to 'deter the removal of children from the United States to foreign countries in order to obstruct parental rights.'" *United States v. Newman*, 614 F.3d 1232, 1235 (11th Cir. 2010) (quoting H.R. Rep. No. 103-390, at 1 (1993)). The statute makes clear that it prohibits both removal and retention of a child outside the United States if it is done "with the intent to obstruct the *other parent's* lawful exercise of his or her parental rights." *Id*. at 1236 (citing 18 U.S.C. § 1204(a)) (emphasis added). Mr. Uces' argument that there can be no violation of § 1204 because he had equal parental rights misreads the statute. The statute criminalizes his intent to obstruct Ms. Memili's parental rights—i.e., time sharing and access to her daughter—without regard to whether or not Mr. Uces also had equal parental rights. *See* 18 U.S.C. § 1204(b)(2) (defining "parental rights" to include "the right to physical custody of the child [ ] *whether joint or sole* (and includes visiting rights)") (emphasis added). *See also United States* v. *Fazal-Ur-*

7

*Raheman-Fazal*, 355 F.3d 40, 46 (1st Cir. 2004) ("That [parents] shared custody of their children is of no import under [§ 1204].").

Second, construing this challenge as one to the sufficiency of the evidence, ample evidence supports the jury's guilty verdict.  Mr. Uces asked to have the couples' daughter stay with him for the weekend of September 16, 2016, and sent Ms. Memili a reservation for a Red Roof Inn in Jacksonville, where he said they would be staying.  *See* D.E. 98 at 172–73, 183.  In fact, Mr. Uces had already purchased tickets to Turkey, *see* D.E. 100 at 88, and told the hotel not to disclose that he did not check in,  *see* D.E. 99 at 65.  Other evidence at trial is inconsistent with Mr. Uces' theory that the trip was a mere vacation.  Mr. Uces' computer revealed web browsing history on child custody laws, child abduction, and international treaties.  *See id*. at 188–90.  He did not book a return flight to Jacksonville and did not board his return flight from Turkey to New York.  *See id*. at 159–64.  He also had given his brother power of attorney to sell his car in the United States and terminated the rental agreement on his safety deposit box right before flying to Turkey.  *See id*. at 170, 198.  *See United States v. Miller*, 626 F.3d 682, 691 (2d Cir. 2010) (sufficient evidence to support conviction under § 1204 where evidence was presented to show that the defendant remained in Canada despite knowledge of court orders granting husband parental rights).

Because sufficient evidence viewed in the light most favorable to the jury's verdict supports Mr. Uces' conviction, it is clear that he has failed to show that there has been a manifest miscarriage of justice. *See Fries*, 725 F.3d at 1291 (noting that the manifest miscarriage of justice standard "requires us to find either that the record is devoid of evidence of an essential element of the crime or 'that the evidence on a key element of the offense is so tenuous that a conviction would be shocking'") (quoting *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006)).

## III

For the foregoing reasons, we affirm Mr. Uces' conviction.

**AFFIRMED.**