[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10033
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cr-00036-CDL-MSH-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HAROLD COLEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 31, 2019)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

PER CURIAM:

Harold Coley appeals his convictions for conspiring to file false claims, committing mail fraud, and embezzling mail. On appeal, Coley argues that the evidence presented at trial was insufficient to support the jury's verdict.  After thorough review, we affirm Coley's convictions.

## I.    FACTS

A grand jury charged Coley by indictment with 48 counts: 1 count of conspiracy to file false claims, in violation of 18 U.S.C. § 286; 18 counts of mail fraud, in violation of 18 U.S.C. § 1341; 18 counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (a)(1), (c)(5); and 11 counts of embezzlement of mail, in violation of 18 U.S.C. § 1709.  The indictment charged that, in 2012 and 2013, Coley, a United States Postal Service ("USPS") employee, participated in a tax-fraud scheme along with co-conspirators Keisha Lanier, Tamika Floyd, Talashia Hinton, and Mequetta Snell-Quick.  The indictment charged that Coley participated in the scheme by providing addresses, many of which were for vacant lots or homes, on his postal route to Keisha Lanier "for the purpose of having fraudulent federal income tax refund checks mailed to those addresses."  The indictment further alleged that Coley, for payment, diverted the tax refund checks from the mail and provided them to Lanier and others involved in the scheme. Coley pled not guilty to all 48 charges, and his case proceeded to a jury trial.

2

At trial, the government presented the testimony of Coley's co-conspirator Tamika Floyd, who testified that she was employed as a child support clerk at the Lee County Public Health Department, where she had access to the demographic information—names, dates of birth, social security numbers—of the minors listed in the Department's database. Lanier, a tax preparer whom Floyd met through family, asked Floyd to provide Lanier with the personal information of minors so that Lanier could then use the minors' information to file tax returns with the IRS. Lanier offered Floyd half of the proceeds for her involvement in the scheme, and in 2012 and 2013, Floyd provided Lanier with the personal information requested. Floyd further testified that Lanier paid "a mailman" to deliver the refund checks to Lanier and that Floyd had heard a phone conversation between Lanier and the mailman, during which the mailman responded to the name "Harold."

The government also called as a witness co-conspirator Talashia Hinton, who testified that she was responsible for picking up information from Floyd and delivering the information and checks to Lanier. Hinton also filed fraudulent tax returns and accompanying W-2 forms under the names provided by Floyd, requesting that the IRS mail out the corresponding refund checks to addresses provided by Lanier. Hinton testified that Lanier had received those addresses directly from the mailman, whom she called "Harold." Lanier told Hinton that the mailman's first name was "Harold [or] Henry," and that his last name was "Cool,

3

Cooley, Cool." Lanier also told Hinton that the mailman was "the main person that needs to get paid because he's getting her addresses." Hinton met Lanier's mailman in person three times and identified Coley in the courtroom as the mailman whom she met. Sandra Daniel, Lanier's babysitter, also identified Coley in the courtroom as someone who would visit Lanier's home two to three time per week to talk about addresses and drop off and pick up treasury checks.

The jury also heard from Mequitta Snell-Quick, another co-conspirator, who testified that she lived in the same neighborhood as Lanier and participated in the fraudulent tax scheme. Snell-Quick identified Coley in the courtroom as her neighborhood's mailman. She also testified that she had observed Lanier pick up an envelope containing checks from Coley; she had picked up mail from Coley containing checks for Lanier; and, on one occasion, Coley delivered checks to Snell-Quick's house that were addressed to other people at different locations.

Coley's manager at the USPS location where he worked identified Coley in court as a postal worker and testified that, every year during the tax-return season, supervisors talked to the postal employees about returning and reporting checks that were addressed to "bad addresses." His manager also stated that he would expect that postal workers would know what homes on their respective routes were abandoned and vacant, and that postal workers were taught to return all mail addressed to vacant or non-existent homes to their supervisors. Coley was

4

assigned to Delivery Route 622 and had never reported any issues with treasury checks on his route to his manager.

The government also presented testimony of two government agents who investigated the case. Special Agent Jarrett Arrington worked for the USPS's Postal Inspection Service and interviewed Coley concerning his role in the tax fraud scheme. During the interview, Coley admitted that he found it suspicious that many tax refund checks were sent to vacant homes on his route or to people on his route whom he knew to be unemployed. However, Coley did not report his suspicions to his supervisor. Coley said he had returned refund checks that were addressed to vacant homes to the sender but admitted that he had delivered approximately ten refund checks, addressed to different recipients, to Snell-Quick and ten refund checks, addressed to different recipients, to Lanier. Agent Arrington testified that Coley denied providing a list of vacant or fictitious addresses to Lanier and told Agent Arrington that he had never received any payment or thing of value from Lanier or Snell-Quick.

Special Agent David Tucker was the lead IRS agent working on Coley's case.[1] Agent Tucker testified that, during the time-period comprising the tax-fraud

---

[1] The government also presented the testimony of 11 victims, and 2 mothers of victims, whose identities were used to file the fraudulent tax returns. These victims all stated that they did not file any tax returns through Lanier or her colleagues and did not receive any refund checks for those tax returns.

scheme, 1,676 fraudulent tax refund checks (totaling $2,548,606) were directed to addresses on Coley's route. Of those 1,676 fraudulent checks, Agent Tucker determined that 692 tax refund checks (totaling $861,749) were actually delivered. Of those 692 fraudulent checks, many were delivered in September of 2012 to vacant or fictitious addresses. Agent Tucker testified that Coley reported to work every single day in September of 2012 except Labor Day, but admitted that he could not definitively confirm that Coley possessed the specific checks presented by the government as evidence.

At the close of government's case, Coley's counsel moved for a judgment of acquittal as to only Counts 17, 18, 35, and 36, arguing that the government failed to call the victims of those counts. The district court denied Coley's motion, and Coley chose not to testify or otherwise put on a case.

After deliberation, the jury found Coley not guilty of Counts 20-32 and 34-37 and guilty of Counts 1-14, 16-19, and 38-48. The district court also dismissed Counts 15 and 33 because the government failed to include them in the indictment. Ultimately, Coley was found guilty of at least one count each of conspiracy to file false claims (Count 1), committing mail fraud (Counts 2-14, 16-19), and embezzling mail (Counts 38-48). The district court sentenced Coley to 97 months' imprisonment and 3 years' supervised release and ordered that he pay $901,351 of restitution.

Coley timely appealed his convictions.

## II.    STANDARD OF REVIEW

Ordinarily, we review *de novo* whether there is sufficient evidence to support a conviction. *United States v. Jiminez*, 564 F.3d 1280, 1284 (11th Cir. 2009). In that case, "the evidence will be sufficient to support a conviction if 'a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'" *Id.* at 1284–85 (quoting *United States v. Calhoon*, 97 F.3d 518, 523 (11th Cir. 1996)). "But where a defendant does not move for acquittal or otherwise preserve an argument regarding the sufficiency of the evidence in the court below, the defendant 'must shoulder a somewhat heavier burden: we will reverse the conviction only where doing so is necessary to prevent a manifest miscarriage of justice.'" *United States v. Fries*, 725 F.3d 1286, 1291 (11th Cir. 2013) (quoting *United States v. Greer*, 440 F.3d 1267, 1271 (11th Cir. 2006)). This standard requires that we find that either the record is devoid of evidence of an essential element of the crime or "that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006) (quotation marks omitted).

Relevant to this appeal, Coley moved for judgment of acquittal on some counts (Counts 17 and 18), but not others (Counts 1, 2-14, 16, 19, and 38-48). In

any event, both standards require us to "view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility determinations that support the jury's verdict." *Id.*; *see also United States v. Robertson*, 493 F.3d 1322, 1329 (11th Cir. 2007) (applying *de novo* review to mail fraud conviction). This test for sufficiency is the same for direct and circumstantial evidence. *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015).

## III.    DISCUSSION

In support of his argument challenging the sufficiency of the evidence, Coley argues that direct evidence was lacking and that the government did not present "tangible" evidence of his involvement in the scheme. For example, Coley argues that the government failed to prove that Coley communicated with his co-conspirators about the scheme because the government provided "no record of one phone call or text message" between Coley and others. Coley also insists that, because the government "could not with any specific identify what refund checks [he] received for Lanier to any addresses that [he] allegedly provided," the evidence was insufficient to convict him of embezzling mail.

We first address Coley's argument that the government failed to prove Coley's crimes because they did not provide "tangible evidence" to support the convictions. While it is unclear exactly what Coley means when he uses the phrase

8

"tangible evidence," we interpret his argument as an attack on the government's lack of physical, documentary evidence showing his communication with his co-conspirators and his possession of the checks. *See, e.g., United States v. New York Tel. Co.*, 434 U.S. 159, 169–170 (1977) (distinguishing between "tangible" property like "documents, books, papers and any other tangible objects" and "intangible" property "such as dial impulses recorded by pen registers"). However, Coley's reliance on "tangible evidence" is misplaced because we do not require the government to prove the crimes of conspiracy, mail fraud, and mail embezzling by presenting tangible, physical, documentary evidence of each element.

In fact, we do not require the government to present even direct evidence proving Coley's crimes. "Conspiracy may be proven by circumstantial evidence and the extent of participation in the conspiracy or extent of knowledge of details in the conspiracy does not matter 'if the proof shows the defendant knew the essential objective of the conspiracy.'" *Gupta*, 463 F.3d at 1194 (quoting *United States v. Suba*, 132 F.3d 662, 672 (11th Cir. 1998)). The government may also "present circumstantial evidence to prove knowledge of the scheme." *United States v. Pierre*, 825 F.3d 1183, 1193 (11th Cir. 2016). Likewise, "[m]ail fraud can be proved by circumstantial evidence." *Robertson*, 493 F.3d at 1330; *see also United States v. Metallo*, 908 F.2d 795, 798 (11th Cir. 1990) (affirming mail fraud

9

conviction based on circumstantial evidence of appellant having used the United States mails to carry out his fraudulent scheme because "[t]o establish use of the mails, direct evidence is not required").   With respect to mail embezzling, "the government must prove specific intent to defraud," *United States v. Waymer*, 55 F.3d 564, 568 (11th Cir. 1995), but "circumstantial evidence of criminal intent can suffice." *United States v. Suba*, 132 F.3d 662, 673 (11th Cir. 1998). Circumstantial evidence is sufficient because "[g]uilty knowledge can rarely be established by direct evidence, especially in respect to fraud crimes which, by their very nature, often yield little in the way of direct proof." *Id.*  Thus, we can affirm Coley's convictions even if the government relied entirely on circumstantial evidence.

Here, however, the record reflects that the government presented both direct *and* circumstantial evidence to prove each of the essential elements of the crimes for which Coley was convicted.  Regardless of whether the evidence provided by the government was direct or circumstantial, we will make all reasonable inferences that tend to support the jury's verdict. *United States v. Williams*, 390 F.3d 1319, 1323–24 (11th Cir. 2004).

We briefly summarize the evidence provided before considering whether the evidence was sufficient to prove each essential element of the crimes for which Coley was convicted. The government presented direct evidence of Coley's

10

involvement in the scheme through the testimony of Coley's co-conspirators and the testimony of Special Agent Arrington, who testified that Coley partially admitted his role in the conspiracy during the USPS interview. Three different witnesses identified Coley in the courtroom as the mailman who delivered addresses and checks to his co-conspirator, Lanier, the lead perpetrator of the tax fraud scheme. More specifically, one of Coley's co-conspirators testified that Lanier paid "a mailman" to deliver the refund checks to Lanier and that the mailman responded to the name "Harold."

The government also presented evidence that Coley spoke to Lanier about providing her with addresses—many of which were for vacant lots or homes—on his postal route so fraudulent federal income tax refund checks could be mailed to those addresses. The government presented evidence that Coley provided lists of addresses to Lanier and delivered fraudulent tax return checks to Lanier. Coley's manager at USPS testified that Coley would have known which homes on his route were vacant and had a duty to return mail addressed to those homes, but that Coley did not do so. The government also presented evidence that Coley received cash for providing and delivering the checks and addresses to Lanier—and a co-conspirator testified that Lanier told her the mailman was "the main person that needs to get paid because he's getting her addresses." Finally, Special Agent Tucker's testimony confirmed that 692 fraudulent tax refund checks were

11

delivered to vacant, abandoned, or nonexistent homes on Coley's mail route on days when Coley worked.

For the reasons that follow, we conclude that the evidence presented by the government was sufficient to prove the crimes for which Coley was convicted.

### a. Conspiracy to File False Claims

Coley was found guilty on Count 1, which charged him with conspiracy to file false claims. Because Coley did not move for acquittal or otherwise preserve his sufficiency argument below, we will reverse his conviction only if we find that either the record is devoid of evidence of an essential element of the crime or "that the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *Milkintas*, 470 F.3d at 1343.

To convict a defendant for conspiracy to file false claims under 18 U.S.C. § 286, the government must prove, beyond a reasonable doubt, (1) the existence of an agreement to achieve an unlawful objective, (2) the defendant's knowing and voluntary participation in the conspiracy, and (3) the commission of an overt act in furtherance of the conspiracy. *Gupta*, 463 F.3d 1182 at 1194. Section 286 "applies only when the conspirators agree to defraud the government in a specific manner," namely by obtaining the payment of false, fictitious, or fraudulent claims. *United States v. Lanier*, 920 F.2d 887, 892 (11th Cir. 1991). "Conspiracy may be proven by circumstantial evidence and the extent of participation in the conspiracy

12

or extent of knowledge of details in the conspiracy does not matter 'if the proof shows the defendant knew the essential objective of the conspiracy.'" *Gupta*, 463 F.3d at 1194 (quoting *Suba*, 132 F.3d at 672). The government may also "present circumstantial evidence to prove knowledge of the scheme." *Pierre*, 825 F.3d at 1193.

The evidence supported the jury's finding that Coley conspired to file false claims by (1) agreeing to deliver vacant and fictitious addresses and fraudulently obtained refund checks to Lanier, (2) knowingly and voluntarily participating in the tax-fraud scheme, and (3) committing an overt act—in this case, the delivery of addresses on his postal route and fraudulent refund checks—in furtherance of the tax-fraud scheme. *See* 18 U.S.C. § 286.

### b. Mail Fraud

Because Coley's counsel moved for acquittal as to Counts 17 and 18 (although not as to Counts 2-14, 16, or 19), these counts are subject to a mixed standard of review. We apply the tougher *de novo* standard of review to Coley's mail fraud convictions, *Jiminez*, 564 F.3d at 1284, and will affirm Coley's convictions if "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Robertson*, 493 F.3d at 1329 (quoting *United States v. Tinoco*, 304 F.3d 1088, 1122 (11th Cir. 2002)).

To prove mail fraud under 18 U.S.C. § 1341, the government must prove, beyond a reasonable doubt, (1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of interstate mails in furtherance of the scheme. *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Id.* "A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." *Id.* (quotation and marks alteration omitted).

The government presented the following direct and circumstantial evidence to prove the mail fraud counts charged in the indictment. Coley's co-conspirators testified about his involvement in the scheme and identified him as the mailman who delivered lists of addresses and fraudulent tax return checks to Lanier. Although Coley denied providing a list of vacant or fictitious addresses to Lanier, "we make all reasonable inferences and credibility determinations in favor of the government." *Robertson*, 493 F.3d at 1331. In addition to co-conspirator testimony, Special Agent Arrington testified that Coley himself partially admitted his role in the conspiracy during his USPS interview when he admitted that he had delivered approximately ten refund checks, addressed to different recipients, to Snell-Quick and ten refund checks, addressed to different recipients, to Lanier.

14

The testimony of Coley's USPS manager established that Coley knew the abandoned and vacant houses on his route and, although Coley had a duty to return mail addressed to vacant homes, he never did so.  The evidence established that many of the 692 fraudulent tax refund checks were delivered in September of 2012, and Coley reported to work every single day in September 2012, except Labor Day.

Viewing this evidence in the light most favorable to the government and resolving all reasonable inferences and credibility determinations in favor of the jury's verdict, *Robertson*, 493 F.3d at 1329, it was reasonable for the jury to conclude that Coley was guilty of mail fraud by (1) intentionally participating in Lanier's tax-fraud scheme and (2) using the postal service to obtain address information and intercept and deliver the fraudulent tax refund checks in furtherance of that scheme.  *See* 18 U.S.C. § 1341.

### c.  Mail Embezzlement

The jury convicted Coley of embezzling mail, as charged in Counts 38-48. Coley did not move for acquittal or otherwise preserve an argument regarding the sufficiency of the evidence on these counts, so we will reverse the jury's guilty verdict "only where doing so is necessary to prevent a manifest miscarriage of justice.'"  *Fries*, 725 F.3d at 1291 (quotation marks omitted).

Lastly, to establish the crime of mail embezzlement under 18 U.S.C. § 1709, the government must show beyond a reasonable doubt that the defendant (1) was a Postal Service employee, (2) was entrusted with, or came into the possession of, "any article or thing . . . intended to be conveyed by the mail," and (3) knowingly embezzled or stole that article or thing. 18 U.S.C. § 1709. As to the third element, this Court has held that, in order "to convict a person of mail fraud, the government must prove specific intent to defraud." *Waymer*, 55 F.3d at 568. In so proving, the government "need not produce direct proof of scienter in a mail fraud case, however; circumstantial evidence of criminal intent can suffice." *Suba*, 132 F.3d at 673.

Here, the government provided sufficient evidence to support the jury's finding that Coley embezzled mail by (1) being a Postal Service employee, (2) who was entrusted with tax-refund checks that were intended to be conveyed by mail, and (3) knowingly embezzled those checks. *See* 18 U.S.C. § 1709. Because Coley does not dispute the first two elements, we consider only the third. Although Coley argues that he never possessed the fraudulent tax refund checks, witnesses identified Coley as the mailman responsible for providing addresses to Lanier, and the government provided evidence that 692 fraudulent tax refund checks were delivered to vacant or abandoned homes located on Coley's mail route and were mailed at times when Coley was working. Witnesses also testified that, although

16

Coley had a duty to return any mail that was addressed to vacant or abandoned homes, he never did so.  Viewing this evidence in the light most favorable to the government and resolving all reasonable inferences and credibility determinations in favor of the jury's verdict, it was reasonable for the jury to conclude that Coley knowingly removed the tax refund checks from the mail and took them into his possession.

Overall, we cannot conclude that the record was devoid of an essential element of any of the crimes for which he was convicted or that the evidence presented was so tenuous that Coley's convictions are "shocking."  *Milkintas*, 470 F.3d at 1343.  Because the evidence supported the jury's findings that Coley conspired to file false claims, committed mail fraud, and embezzled mail, the jury's guilty verdict did not constitute a manifest miscarriage of justice. Accordingly, Coley's convictions are

**AFFIRMED.**

17