[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-15064
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-00037-LAG-TQL-2


UNITED STATES OF AMERICA,

                                        Plaintiff - Appellee,

versus

SHATAZ HAMPTON,

                                        Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(October 21, 2020)

Before JILL PRYOR, BRASHER, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Shataz Hampton ("Hampton") appeals his convictions for armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A).  On appeal, Hampton argues for the first time that the evidence presented at trial was not sufficient to support his convictions, and that his convictions should be reversed to prevent a manifest miscarriage of justice.  After reviewing the record, and reading the parties' briefs, we affirm the judgment of convictions.

**I.**

We ordinarily review *de novo* the sufficiency of the evidence, with all facts and inferences drawn in favor of the government; however, when a defendant fails to move for a judgment of acquittal, as Hampton did in this case, we will reverse a conviction only if necessary to prevent a manifest miscarriage of justice.  *United States v. Fries*, 725 F.3d 1286, 1291 (11th Cir. 2013). "This standard requires [us] to find that the evidence on a key element of the offense is so tenuous that a conviction would be shocking."  *United States v. Tagg*, 572 F.3d 1320, 1323 (11th Cir. 2009) (quoting *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002)).

Additionally, credibility questions are the exclusive province of the jury, and we assume that the jury answered them all in a manner that supports the jury's verdict.  *See United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009);

2

*United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005). We will not review the jury's credibility determination unless such testimony is incredible as a matter of law. *United States v. Feliciano*, 761 F.3d 1202, 1206 (11th Cir. 2014). Testimony is incredible when it is unbelievable on its face, such as where the witness could not have possibly observed certain events or the events are contrary to the laws of nature. *Id.* The fact that a witness has lied in the past and thought the present testimony would benefit her does not make the testimony incredible. *Thompson*, 422 F.3d at 1291.

## II.

To be guilty of armed bank robbery, a defendant must knowingly take money that belongs to a bank from a person by means of force, violence, or intimidation and must place someone's life in jeopardy by using a dangerous weapon while stealing money. *See* 18 U.S.C. § 2113(a), (d). The government may prove that a defendant used a firearm during a crime of violence by showing that the defendant used or carried a firearm to carry out a robbery by means of violence. *See id*. § 924(c)(1)(A).

Hampton contends that his convictions should be reversed because his codefendant Kamilya Whitlock ("Whitlock") was the only person who identified him as a participant in the Renasant Bank robbery and her testimony was incredible. Hampton asserts that because Whitlock had already been convicted for

3

bank robbery, she was testifying in the hope she would receive a sentence reduction, and this meant her testimony was not credible. Hampton also claims that her testimony was not credible because she had previously told the police that she had not seen Hampton with a firearm, but at Hampton's trial, she testified to the contrary. Thus, Hampton claims that his convictions should be reversed because the only evidence to support the convictions was Whitlock's incredible testimony, which is not sufficient for a conviction.

Based on our review of the record, we conclude that the government presented sufficient evidence, in addition to Whitlock's testimony, to support Hampton's convictions. The Renasant Bank employees testified that there were two robbers, a man and a woman, and the robber who brandished the shotgun was a man. The bank employees also testified, consistent with Whitlock's testimony, that the robber who jumped over the counter was a woman. The government presented the evidence of a federal agent who testified that Hampton purchased a shotgun a week before the robbery; that the shotgun was found in a vacant lot in Hillsborough County, Florida, about a year after the robbery; and the lot where the gun was found is approximately five miles from the residence of Hampton's family members and friends, whom he visited regularly. This testimony is consistent with Whitlock's testimony that after the robbery, she and Hampton drove to Tampa (in

Hillsborough County, Florida) and stayed with Hampton's family and friends for several days.

Additionally, on cross-examination, Hampton's counsel confronted Whitlock with her prior statements to the FBI. A few weeks after the robbery, during her interview with FBI agents, Whitlock admitted that she knew Hampton but had never seen him with a gun. On cross-examination, she stated that she misled the FBI agents because she believed that if she told them that Hampton had a shotgun, the agents would know that she and Hampton had robbed the Renasant Bank.

Importantly, before Whitlock's testimony and at the close of the evidence, the district court instructed the jury that Whitlock was testifying in the hope of receiving a lesser sentence than she would normally receive. The district court cautioned the jury that a witness who hopes to gain more favorable treatment with the government may have a reason to make a false statement; thus, the jury should consider such testimony with more caution.

Based on our review of the record, we conclude that there was no manifest miscarriage of justice. *See Fries*, 725 F.3d at 1291. We do not review Whitlock's credibility because her testimony was not unbelievable on its face or contrary to the laws of nature, and other evidence presented by the government corroborated her testimony. *See Feliciano*, 761 F.3d at 1206. The fact that Whitlock had

5

previously lied to the FBI and was testifying in the hope of receiving a lesser sentence does not make her testimony incredible. *See Thompson*, 422 F.3d at 1291. The jury's verdict indicates that it chose to believe Whitlock's testimony, even with the district court's cautionary instruction. Thus, the evidence of Hampton's identity at the bank is not so tenuous that a conviction would be shocking or a manifest miscarriage of justice. *See Tagg*, 572 F.3d at 1323; *Jiminez*, 564 F.3d at 1285.

Accordingly, based on the aforementioned reasons, we affirm Hampton's convictions.

AFFIRMED.