[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-13890

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RICHARD CONFER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:19-cr-00041-MW-MAF-1

_____

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Richard Confer appeals his convictions for attempted production of child pornography and attempted enticement of a minor to engage in sexual activity. After careful review, we affirm.

## I.    BACKGROUND

The mother of a 14-year-old child ("C.V.") reported to the Leon County Sheriff's Department that inappropriate messages were being exchanged between an adult family member, Confer, and C.V. Leon County Sheriff's Department Special Agent Charles Travis Knight took possession of C.V.'s phone and, posing as C.V., began exchanging messages with Confer over the smartphone applications Snapchat and Instagram.

Based on those exchanged messages, a grand jury indicted Confer on charges that he attempted to produce child pornography, in violation of 18 U.S.C. § 2251(a), (e) (Count One), attempted to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count Two), and attempted to transfer obscene material to a person under the age of 16, in violation of 18 U.S.C. § 1740 (Count Three).[1]

---

[1] Confer does not appeal his Count Three conviction; thus, we do not discuss it further.

Confer moved to suppress text messages and photographs exchanged over Snapchat, asserting that Knight had lost or destroyed some messages in violation of his due process rights. A hallmark of Snapchat is that photographs and text messages users send one another are automatically deleted after they are viewed. *See United States v. Kushmaul*, 984 F.3d 1359, 1361 n.3 (11th Cir. 2021). Confer noted that it was undisputed that although Knight took photos of most of the exchanges with a digital camera, he did not photograph them all; thus, he lost or destroyed some evidence.[2] Confer also asserted that Knight did not send a law enforcement preservation request to Snapchat which, presumably, would have resulted in Snapchat turning over all the exchanged messages. Confer argued that Knight's failure to send a preservation request evidenced bad faith. Thus, he argued, the messages should be suppressed.

The government responded that Knight *did* make a preservation request with Snapchat, but given the nature of the platform, including that the company does not preserve deleted messages on its servers, the request was unlikely to bear fruit. Indeed, "[n]either the full chat content between C.V. and the Defendant nor the full chat content between Det. Knight and the Defendant was

---

[2] It is undisputed that Knight did not take screenshots of the exchanges—presumably a more efficient process than using a separate camera to photograph messages—because Snapchat alerts a message's sender if the recipient takes a screenshot of sent content.

preserved" by Snapchat. Doc. 42 at 5.[3] In anticipation of that result, Knight took photos of the disappearing messages as quickly as he could, all in good faith. The government asserted that the alleged missing messages constituted an extremely small percentage of the total number of exchanges. Plus, the government argued, Confer had failed to show how the missing evidence was likely to significantly contribute to his defense.

The district court held a hearing on Confer's motion at which Knight testified. Knight testified that after C.V.'s mother contacted law enforcement about Confer's sexual text messages to C.V., Knight seized control of C.V.'s phone and changed her social media passwords so that only he could access them. From there, Knight assumed C.V.'s identity without Confer's knowledge, using his own personal phone instead of C.V.'s.

Thereafter, Confer sent a message through Instagram to C.V.'s account. The next day, Confer sent another message, and about four days later, Knight, posing as C.V., responded. At Confer's suggestion, the two switched to Snapchat. Once communication switched to Snapchat, and because of Snapchat's message deletion feature, to document the messages Knight had to take digital photos of the phone he was using to communicate with Confer. He created a summary chart containing the contents of all the messages and updated it on an ongoing basis.

---

[3] "Doc." numbers are the district court's docket entries.

All told, Knight captured "roughly 6[00] or 700" images documenting the approximately 1500 to 1600 chats with Confer during one month. Doc. 93 at 62. Many of the images documented a string of messages. Knight acknowledged that, due to the fast pace of the messaging and the fact that he needed to photograph messages before they disappeared, he failed to capture a few messages. But he testified that he had "independent recollection" of the content of the conversations. *Id.* at 66. And, for most of the disputed messages, Knight explained how the messages were preserved in his photos, even though some were partially obscured or appeared in a previous or successive photo he took. Knight testified that he never purposely excluded messages from his documentation of communication with Confer.

Knight testified that at the time of the investigation, the "consensus among[] a majority of law enforcement" was that Snapchat did not save any messages or photos users sent through the application. *Id. at* 33. Conversely, Instagram "maintains a database" with material that users send back and forth. *Id.* at 35. In contrast to law enforcement's consensus as to Snapchat, the consensus was that Instagram (owned by Facebook) would produce messages in response to a subpoena or warrant.

Knight further testified that he made preservation requests to both Snapchat and Instagram. He clarified that a preservation request does not guarantee preservation because companies have the right to refuse the request. In fact, despite the preservation request and a search warrant served on Snapchat for information

relating to C.V.'s account's communications, Snapchat provided "only three chats . . . from the communication between C.V. and [Confer] on C.V.'s account," and they were all from only one day in the investigation. *Id.* at 78.

The defense called John Sawicki, an electronic evidence consultant and forensic computer scientist. Sawicki testified that he was familiar with the application Snapchat. He testified that Snapchat "has the ability to preserve, at least according to them, the . . . messages themselves, . . . pictures, anything of that nature, if they received [a] preservation request." Doc. 94 at 16. But he acknowledged that "there is no guarantee to what Snapchat will provide related to legal process that's returned from [a] law enforcement search warrant." *Id.* at 21.

The district court denied the motion to suppress. The court explained that to prevail on his due process claim based on allegedly lost evidence, Confer was required to show that the evidence was likely to significantly contribute to his defense and show bad faith by Knight. *See United States v. Revolorio-Ramo*, 468 F.3d 771, 774 (11th Cir. 2006). And, the court determined, Confer had shown neither element. The court found Knight to be credible, including his concerns about whether Snapchat would preserve anything even upon receipt of a preservation request. Rather than finding bad faith, the district court found "good faith" by Knight: he "literally took hundreds and hundreds of photographs trying to capture all kinds of information and did not simply try to capture information that he was going to rely on or he thought would be helpful

to this prosecution." *Id.* at 56. Further, the district court found that "there is no evidence that there was anything lost or destroyed that would have been helpful to the defense." *Id.*

The day after the hearing, the government filed on the docket a copy of the preservation request Knight sent to Snapchat at the beginning of the investigation and a confirmation of receipt of that request from Snapchat.

Confer proceeded to a jury trial. The victim, C.V., testified. C.V. testified that Confer, her second cousin's husband, was like a "father figure" to her, someone she trusted. Doc. 96 at 122–23. She testified that Confer sent her a direct message over Instagram in which he told her that she "was dressing sexy" and "looked good," communications that made C.V. feel "[r]eally uncomfortable." *Id.* at 131. Confer once asked C.V. to "prove" that she was wearing thong underwear. *Id.* at 153. At some point, Confer told C.V. that he was taking his children to an area near C.V.'s house—the two lived in separate cities—and that he would have stopped by to see her but did not because "it would look bad on him, and everyone would wonder why he stopped by." *Id.* at 134.

Eventually, C.V. told her mother about the messages and her discomfort about them. After a few days of communicating with Confer under the supervision of her mother—who took photographs of the Snapchat messages between Confer and her daughter—C.V. and her mother went to the police.

Knight explained how he took over C.V.'s social medica accounts and detailed the messages Confer sent to him over Snapchat while Knight was posing as C.V. In early exchanges, Confer asked if C.V. kissed the penis of a boy she claimed to see; told C.V. he did not know what her "ass" looked like because he had not seen it; told C.V. to "[p]lay with it" first to know what felt good, which Knight interpreted to mean masturbation; told C.V. to watch porn to "[l]earn how it all works," including "[h]ow to suck a D," and how to masturbate. *Id.* at 192, 198, 200, 205. Knight testified that Confer sent C.V. a message that told her she could not get pregnant or lose her virginity if she had anal sex.

Knight testified that Confer later repeatedly asked directly or suggested that C.V. send him nude images. He specifically asked her to send a photo of her vagina "with [her] finger in it," *id.* at 243, and a photo "with a hairbrush hanging out of [her] vajayjay" or vagina, Doc. 98 at 56. He asked C.V. to do a live video over Snapchat after C.V. refused to send him a nude photograph. Knight testified that, without prompting, Confer sent multiple photographs and at least one video of his testicles and penis.

Knight also testified that Confer asked C.V., "whatcha gonna do if I pick you up for spring break and pull my D out?" Doc. 97 at 242. He told C.V. he wanted her "naked in person." Doc. 98 at 58. Knight testified that Confer offered C.V. $100 to "lick [her] vaj." Doc. 97 at 290. He repeatedly brought up C.V.'s spring break and asked C.V. to "[w]ork on [her] mom" to convince her mom to let her visit him. *Id.* at 292. When Knight, posing as C.V., said her

mom was "not having it," Confer asked, "If I drove there, how would that work?" *Id.* at 303. He told C.V. he would "work out some way . . . to see [her]" by driving to Tallahassee, where she lived. Doc. 98 at 25. A few days later, he messaged that "we need to schedule the day to come see you." *Id.* at 66.

Leon County Sheriff's Office Detective Robert Walker testified that he extracted data from Confer's phone indicating that Confer had searched Google, Wikipedia, and Yahoo! for "girls average age to lose virginity" and "[c]an you record Snapchat," as well as for information about incest and its legality and sending nude photographs on Snapchat.

At the close of the government's evidence, Confer moved for a judgment of acquittal on all counts. The district court denied the motion.

Confer testified in his own defense. Confer testified that Knight, posing as C.V., "pursued" him by "increas[ing] the sexual nature of th[e] conversation." Doc. 74 at 22. Confer acknowledged "100 percent" sending C.V. inappropriate messages and did not dispute that he sent any of the messages in the record, including repeatedly asking C.V. for nude photographs, sending photographs of his penis, and offering C.V. $100 to lick her vagina. *Id.* at 26. But, he said, he had "no intentions of getting together" in person with C.V. *Id.* at 27. Rather, he "invented a story, a thing, that could never happen" in an attempt to "deflect." *Id.* at 27–28. Despite this, Confer acknowledged trying to convince C.V. to ask her mother if C.V. could visit Confer.

Confer did not renew the motion for judgment of acquittal at the close of his case. Upon Confer's request, the district court instructed the jury on the defense of entrapment. The jury nonetheless found Confer guilty on all counts. The district court sentenced Confer to serve a 180-month term of imprisonment on each count, all to be served concurrently.

This is Confer's appeal.

## II.    STANDARDS OF REVIEW

Confer challenges the district court's denial of his motion to suppress. A district court's ruling on a motion to suppress presents a mixed question of law and fact. *United States v. Zapata*, 180 F.3d 1237, 1240 (11th Cir. 1999). Whether there was a due process violation based on the government's loss of or failure to preserve evidence also is a mixed question of law and fact. *United States v. Wilchcombe*, 838 F.3d 1179, 1191 (11th Cir. 2016). We review the district court's factual determinations for clear error and its legal conclusions *de novo. Id.* And we construe all facts in the light most favorable to the prevailing party below. *United States v. Bervaldi*, 226 F.3d 1256, 1262 (11th Cir. 2000). We are not limited to the evidence introduced at the hearing on the motion to suppress and may consider any evidence presented after the motion was resolved. *United States v. Villabona-Garnica*, 63 F.3d 1051, 1056 (11th Cir. 1995).

Confer also challenges the sufficiency of the evidence to support his convictions on Counts One and Two. Ordinarily, we

review *de novo* whether sufficient evidence supports a conviction, viewing the evidence and taking all reasonable inferences in favor of the jury's verdict. *United States v. Fries*, 725 F.3d 1286, 1291 (11th Cir. 2013). When a defendant moves for a judgment of acquittal at the close of the government's case in chief, his presentation of a case after the denial of that motion generally operates as a waiver of any objection to the decision on the motion unless he renews his motion at the close of all evidence. *United States v. Jones*, 32 F.3d 1512, 1516 (11th Cir. 1994). So, when a defendant fails to renew his motion for judgment of acquittal at the end of all the evidence, we review the verdict only for a manifest miscarriage of justice. *United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012).

A manifest miscarriage of justice occurs only when the record is devoid of evidence of an essential element of the crime or when the evidence on a key element is so tenuous that a conviction would be shocking. *Fries*, 725 F.3d at 1291. This is a "heavier burden" than the defendant would shoulder had he preserved the challenge. *Id.* (internal quotation marks omitted). We must view the evidence in the light most favorable to the government and accept all reasonable inferences and credibility determinations that support the jury's verdict. *United States v. Milkintas*, 470 F.3d 1339, 1343 (11th Cir. 2006).

## III.    DISCUSSION

Confer argues that the district court erred when it denied his motion to suppress the Snapchat messages he sent to C.V., arguing

that Knight failed to capture every message exchanged, resulting in a due process violation. As to his sufficiency challenge, Confer argues that the evidence produced by the government at trial was insufficient to establish that he enticed a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. And he argues that he did not commit a substantial step towards engaging in sexual activity with a minor because he never made any definitive plans to meet C.V. in person. We discuss each of these issues in turn.

### A.    Motion to suppress

To establish that the loss of evidence constitutes a violation of due process, the defendant must show that the evidence was likely to significantly contribute to his defense. *Revolorio-Ramo,* 468 F.3d at 774. Further, the failure to preserve potentially useful evidence only violates due process if the defendant can show bad faith on the part of law enforcement. *Id.*

Confer argues that he can show both that the evidence was likely to significantly contribute to his defense and that Knight acted in bad faith. He argues that "the evidence in the record strongly suggests" that Knight made no preservation request to Snapchat. Appellant Br. at 43. He also suggests that Knight knew his failure to send a preservation request "would result in destruction" of evidence, demonstrating bad faith. *Id.*

Confer has not made the requisite showing. First, Confer summarily argues that the lost evidence would have contributed to

his defense, but he points us to no evidence in support of that argument. We reject it. Second, Confer has not come close to convincing us that the district court erred in finding that Knight did not act in bad faith. Knight testified that he sent Snapchat a preservation request, and the district court found Knight credible. Confer does not challenge that credibility determination, and we see no reason to disturb it. Plus, the government entered into the record a copy of the preservation request and Snapchat's acknowledgement of receipt of that request. *See Villabona-Garnica*, 63 F.3d at 1056 (permitting reviewing courts to consider evidence admitted after the suppression proceedings). Confer has not challenged the legitimacy of those documents.

Confer's argument that Knight knew his failure to send a preservation request would result in destruction of evidence fares no better. Again, Knight *did* send such a request. And Knight testified that the consensus among law enforcement at the time of the investigation was that Snapchat would not preserve messages on its servers. Confer produced no evidence to the contrary. So the evidence shows that even assuming Knight did not send Snapchat a preservation request, it was not the failure to send a preservation request that would result in destruction of evidence, but rather Snapchat's own policies about what it saved for potential preservation. Confer has not convinced us that Knight acted in bad faith and that the district court clearly erred in finding otherwise.

We affirm the district court's denial of Confer's motion to suppress.

### B.    Sufficiency of the evidence

#### 1.  Attempt to produce child pornography

Count One charged Confer with attempt to produce child pornography, in violation of 18 U.S.C. § 2251(a), (e). It is unlawful under § 2251(a) and (e) to attempt to use means of interstate commerce to persuade or coerce a minor to engage in any sexually explicit conduct for the purpose of producing a visual depiction of such conduct. 18 U.S.C. § 2251(a), (e). Confer argues that his communications with C.V. were not "for the purpose of" producing a visual depiction of a minor engaging in explicit conduct. We disagree.

Confer makes three arguments for why the government failed to satisfy this element, but none holds water. First, he argues that the "act of merely asking for a picture is not the type of 'production' contemplated by § 2251(a)," so he was not acting "for the purpose of" producing child pornography. Appellant Br. at 21–22. We have explained, however, that the statute's "prohibition extends not only to those who solicit minors for sex, but also to those . . . who ask for nude photos." *United States v. Caniff*, 955 F.3d 1183, 1192 (11th Cir. 2020).

Second, Confer suggests that because most of his requests for photos were in vague terms, the evidence was insufficient to demonstrate that he sought pornographic images. But Confer acknowledges sending at least two "requests . . . for sexually

explicit pictures." Appellant Br. at 20 n.7. Those two requests alone satisfy this element. *See Caniff*, 955 F.3d at 1192.

Third, Confer argues that "a person who wanted to 'produce' child pornography would *not* use the Snapchat application" because images on the platform disappear when they are viewed. Appellant Br. at 21–22. Even assuming Confer is right that the transmission of a photo that disappears forever would not satisfy the statute, the jury reasonably could have determined that Confer could have preserved any pornographic photos C.V. transmitted via a screenshot or via taking a photo of the incoming image, as Knight did with the images Confer sent.

In sum, viewing the evidence in the light most favorable to the jury's verdict, the verdict as to Count One does not represent a manifest miscarriage of justice. We affirm this count.

### 2. *Attempted enticement of a minor*

Count Two charged Confer with attempting to entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). It is unlawful under § 2422(b) to use means of interstate commerce to persuade or entice an individual under age 18 to engage in sexual activity. 18 U.S.C. § 2422(b). A person commits an attempt when he has the specific intent to commit the underlying charged crime and took actions that constituted a substantial step toward the commission of the crime. *United States v. Lee*, 603 F.3d 904, 913–14 (11th Cir. 2010). Confer argues that he neither intended to induce C.V. to engage in sexual activity nor took a substantial step

towards committing the charged offense. Given the standard of review and that Confer testified in his own defense, we are unconvinced.

First, Confer argues on appeal that he never intended to visit C.V. for the purpose of engaging in sexual activity. He says he "never . . . attempted to have any contact with C.V." Appellant Br. at 25.[4] He testified to the same at trial, claiming he had "no intentions of getting together" with C.V. Doc. 74 at 27. But when a defendant takes the stand and testifies in his own defense, the jury may disbelieve his testimony, and the defendant's own statements may be considered as substantive evidence of his guilt provided there is evidence to corroborate an inference of guilt. *United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). Given multiple messages to C.V. expressing an intent to meet her in her hometown or have her travel to his, there was evidence to corroborate an inference, contrary to his testimony, that Confer *did* intend to meet C.V. to engage in sexual activity.

Second, Confer argues that he never made a substantial step toward committing the offense of enticement. He argues that more than "explicit sex talk" is required, and that a substantial step "would only have occurred if [he] actually traveled or made specific plans to travel." Appellant Br. at 26–27. Without deciding whether

---

[4] Confer also says he "never asked to have sex with C.V." Appellant Br. at 25 n.11. Not so. By his own admission, Confer offered C.V. $100 if he could perform oral sex on her.

the evidence would be sufficient to sustain a conviction had Confer properly preserved his sufficiency challenge, we reject his unpreserved challenge. Confer engaged in more than just explicit sex talk. By his own admission, Confer actively encouraged C.V. to convince her mother to allow her to visit him so that the two could engage in sexual activity. He also discussed an alternative plan of coming to visit C.V., telling her he would "work out some way" to drive to her and that they "need[ed] to schedule the day" for the visit. Doc. 98 at 25, 66. Considering these communications, we cannot say that the record is devoid of evidence of a substantial step or that the evidence is so tenuous that Confer's conviction is shocking. *Fries*, 725 F.3d at 1291. We therefore affirm this count.

## IV.    CONCLUSION

For the foregoing reasons, we affirm Confer's convictions.

**AFFIRMED.**